**Barbara G. HOLLAND, Appellant,**

v.

**NATIONAL STEEL CORPORATION, Appellee.**

No. 85–1707.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1986.

Decided May 28, 1986.

W. Dean DeLaMater, DeLaMater, Hagg & Bohach, Weirton, W.Va., on brief, for appellant.

Carl H. Hellerstedt, Jr., Volk, Robertson, Frankovitch, Anetakis & Hellerstedt, Weirton, W.Va., on brief, for appellee.

Before RUSSELL, SPROUSE and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

Barbara Holland appeals from the district court's grant of summary judgment in favor of her former employer, National Steel Corporation (National). In her diversity action, Holland alleged that National Steel violated her employment contract and failed to pay wages and vacation benefits in accordance with West Virginia state law when it laid her off in 1982. The district court found that Holland's breach of contract claim failed to state a cause of action under West Virginia law, that the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (1982) (ERISA), preempted her claims with respect to the

payment of vacation benefits and that her claim arising from the late payment of wages was moot. We affirm.

## I

National employed Holland as an hourly employee at its Weirton Steel Division beginning in 1965. Prior to October 1978, she was a member of a collective bargaining unit in the Weirton Independent Steelworkers Union (ISU). In October 1978, National promoted her to foreman, a position outside of the collective bargaining unit. The collective bargaining agreement then in effect between National and the ISU provided that promotion to such a position would cause a break in the continuous service upon which an employee's seniority was based. If, however, the employee was later transferred back or demoted to a job in the bargaining unit, her seniority would be restored with full credit for her service in the exempt position.

Holland first expressed an interest in returning to an hourly position in 1980. National responded that she would have to wait until she was no longer needed in her current department. On August 1, 1980, a new collective bargaining agreement between National and ISU took effect which prohibited the return of a supervisor to hourly employment if hourly employees were laid off or if the reason for the supervisor's return was the elimination of the supervisory position. The agreement also provided for an "open window" period in which upper level management could designate certain supervisors whom they would permit to return to the bargaining unit before October 1, 1980. After that date, supervisors would be able to return to the bargaining unit only if the contractual provisions were satisfied.[1] In December 1980, having heard that she might be transferred to another salaried position, Holland informed National that she would prefer to return to her former hourly position rather than accept a transfer. A National superintendent informed her that he was not aware of any plan to transfer her.

---

**1.** In July, 1980, National conducted a series of meetings with supervisory personnel to explain the agreement's provisions including the "open window." Holland does not recall attending any such meeting, and National, for the purposes of this appeal, concedes that she did not.

In February 1982, Holland learned that she could no longer return to an hourly position if any hourly employees were on layoff. In early March, National informed her that her last day of work would be March 6, 1982. As of that date, Holland was entitled to three weeks vacation and five days of salary for days actually worked. National required her to take her unused vacation beginning March 6, 1982 and erroneously allowed her an extra week of vacation. Accordingly, her separation became effective April 2, 1982.[2] National paid her remaining salary and vacation wages in a check issued March 31, 1982, pursuant to its policy of paying salaried employees on the last day of the month. After April 2, 1982, Holland became eligible for benefits under National's Income Protection Plan, a program providing supplemental unemployment benefits.[3]

National also had an extended vacation plan to provide two weeks of additional vacation to employees who had worked for the company for more than fifteen years. Under this plan, Holland was eligible for two weeks of additional vacation as of January 1, 1982. The plan also called for payment of unused extended vacation time to terminated employees. National, however, eliminated the entire program on March 8, 1982, prior to the effective date of Holland's layoff, and Holland received no payment for extended vacation benefits.

## II.

Holland first maintains that the district court erred in granting National summary judgment on her claim that National violated her individual employment contract by not permitting her to return to the hourly ranks when National laid her off from her supervisory position in 1982. The gravamen of Holland's claim is that she and National entered into an employment contract which provided her the right to return to hourly employment and that National's subsequent collective bargaining agreement with the ISU did not alter her personal contract. The district court found, however, that the basis of her previous right to return to hourly employment was the 1977 collective bargaining agreement between ISU and National, and that the 1980 agreement subsequently eliminated that right. We agree with the district court that this claim does not present an issue of material fact and that National was entitled to summary judgment on the claim.

## III.

Holland next contends that National's failure to pay her any extended vacation benefits and its failure to pay her wages and regular vacation pay until March 31, 1982 violated West Virginia law. West Virginia requires employers to pay their employees at least every two weeks unless a special agreement provides otherwise. W.Va.Code § 21–5–3 (1985).[4] In addition, employers must pay laid off workers any wages earned at the time of the layoff no later than the next regular payday or be subject to liquidated damages of up to thir-

---

**2.** Holland argues that her layoff was March 6, 1982, the last day she actually worked. The district court found April 2, 1982 to be the layoff date.

**3.** At the time National informed Holland that she was to be laid off, it had in effect a policy allowing laid off employees the option of taking unused vacation pay as (1) time off prior to the effective date of the layoff or (2) a lump sum payment in lieu of time off. National did not give Holland the option of electing the latter, but required her to take her remaining vacation prior to her layoff. National asserts that it did not give her the option because its Income Protection Plan providing a supplement to state

unemployment compensation benefits required exhaustion of vacation eligibility.

**4.** W.Va.Code § 21–5–3 provides in part:

Every person, firm or corporation doing business in this State, except railroad companies as provided in section one [§ 21–5–1] of this article, shall settle with its employees at least once in every two weeks, unless otherwise provided by special agreement, and pay them the wages due, less authorized deductions and authorized wage assignments.

There was no such special agreement in effect during the relevant portion of Holland's employment with National.

ty days wages in addition to the amount of wages due. W.Va.Code § 21–5–4(d), (e) (1985).[5]

■ The state law contention which Holland raised related both to regular wages and vacation pay. We first treat her vacation pay argument. She maintains that she was entitled to two weeks of extended vacation benefits for her fifteen years of service and to liquidated damages for National's failure to pay her regular vacation benefits until March 31, 1982. The district court held that ERISA preempted her claims for vacation benefits under state law because such benefits are part of an employee welfare benefit plan. 29 U.S.C. § 1144(a).[6] ERISA provides in pertinent part:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) ... benefits in the event of ... unemployment, or vacation benefits ... or (B) any benefit described in section 186(c) of this title....[7]

29 U.S.C. § 1002(1). The United States Department of Labor, through its regulations, has interpreted this section to exempt from ERISA vacation benefits which employers provide out of their general assets as distinguished from vacation benefits paid from a dedicated fund. The regulations state:

> (b) Payroll practices. For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include—
>
> ....
>
> (3) Payment of compensation, out of the employer's general assets, on account of periods of time during which the employee, although physically and mentally able to perform his or her duties and not absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) performs no duties; for example—
>
> (i) Payment of compensation while an employee is on vacation or absent on a holiday, including payment of premiums to induce employees to take vacations at a time favorable to the employer for business reasons....

29 C.F.R. § 2501.3–1(b). Holland asserts that this regulation exempts National's vacation plans from ERISA's preemptive effect, because the benefits are paid out of National's general funds. The meaning of 29 U.S.C. § 1002(1) is, however, quite plain and does not exempt National's vacation plans. As the district court concluded, the statute preempts Holland's state claims for both regular vacation and extended vacation benefits.

---

**5.** W.Va.Code §§ 21–5–4(d) and (e) state in part:

(d) ... when an employee for any reason whatsoever is laid off, the person, firm or corporation shall pay in full to such employee not later than the next regular payday, either through the regular pay channels or by mail if requested by the employee, wages earned at the time of suspension or layoff.

(e) If a person, firm or corporation fails to pay an employee wages as required under this section, such person, firm or corporation shall, in addition to the amount due, be liable to the employee for liquidated damages in the amount of wages at his regular rate for each day the employer is in default, until he is paid in full, without rendering any service therefor: Provided, however, that he shall cease to draw such wages thirty days after such default.

**6.** 29 U.S.C. § 1144(a) states:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

**7.** 29 U.S.C. § 186(c) refers to, *inter alia,* "a trust fund established ... for the purpose of pooled vacation, holiday, severance or similar benefits."

In reaching a contrary result, the Ninth Circuit Court of Appeals found the statutory language of section 1002(1) ambiguous and the Department of Labor regulation reasonable. *California Hospital Association v. Henning*, 770 F.2d 856, 859 (9th Cir.1985). We are, however, persuaded by the reasoning of the Sixth Circuit Court of Appeals which has held vacation plans to be "employee welfare benefit plans" as defined in 29 U.S.C. § 1002(1). *Blakeman v. Mead Containers*, 779 F.2d 1146, 1149 (6th Cir.1985). *Blakeman* is, in our view, consistent with our holdings in *Powell v. Chesapeake and Potomac Telephone Co. of Virginia*, 780 F.2d 419, 421–22 (4th Cir. 1985) and *Holland v. Burlington Industries*, 772 F.2d 1140, 1146–47 (4th Cir.1985). These cases recognize that ERISA's preemption clause, 29 U.S.C. § 1144(a),

> effectuates a broad remedial policy to protect the interests of participants in ERISA-governed plans and their beneficiaries 'by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.'

*Powell*, 780 F.2d at 421 (citation omitted).

█ Holland also contends that she is entitled to liquidated damages for National's failure to pay her final earned wages until March 31, 1982, twenty days after they were due under the scheme of sections 21–5–3 and 21–5–4 of the West Virginia Code. Section 21–5–4(e) provides for liquidated damages to a laid off employee when the employer fails to pay wages earned at the time of a layoff by the next regular payday. At the heart of this claim is Holland's insistence that she was laid off effective March 6, and thus any wages due her had to have been paid by March 11, 1982, her next regular payday under section 21–5–3. The district court determined

that she was laid off effective April 2, 1982, and we agree with this determination. Holland, therefore, is not entitled to liquidated damages under section 21–5–4(e) because National paid her three days before April 2, 1982, the effective date of her layoff.[8] Since liquidated damages are not available, and Holland on March 31, 1982 received all wages due her, the district court properly granted summary judgment in favor of National.

In view of the above, the judgment of the district court is affirmed.

AFFIRMED.

---

**8.** There is, in our view, no question that National committed at least a technical violation of section 21–5–3 by not paying Holland every two weeks pursuant to that section. The liquidated damage section, section 21–5–4(e), however, applies only to section 21–5–4, and, as we have

determined, Holland is not entitled to damages under that section. Because on March 31, 1982, National paid her the five days of regular wages which she earned in early March, we find that the violation of section 21–5–3 alone does not provide a basis for awarding her damages.