377 S.E.2d 652

**Billy Carson LOWE, et al., Appellants**

v.

**IMPERIAL COLLIERY CO., Appellee.**

**Michael WOODSON, et al., Appellants,**

v.

**MILBURN COLLIERY CO., Appellee.**

No. 18370.

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

Rehearing Denied Feb. 22, 1989.

Lee H. Adler, Beckley, Robert S. Baker, Beckley, for appellants.

Larry W. Blalock, Charles Q. Gage, Jackson & Kelly, Charleston, for appellees.

MILLER, Justice:

This case presents the question whether a civil suit by certain employees for the recovery of vacation pay, filed pursuant to the Wage Payment and Collection Act, W.Va.Code, 21–5–1, *et seq.*, is preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* The Fayette County Circuit Court deemed such a suit to be preempted and granted the employers' motion to dismiss. We reverse and remand for further development.

## I.

The defendants, Imperial Colliery Company and Milburn Colliery Company, are coal mine operators in southern West Virginia. The plaintiffs are forty miners who, prior to October, 1984, were employed by the defendants at their Fayette County mines. They have not performed work at the mines since October 8, 1984, one week after the expiration of the collective bargaining agreement between the defendants and the United Mine Workers of America.[1]

On April 7, 1986, the plaintiffs filed this suit in Fayette County Circuit Court pursuant to W.Va.Code, 21–5–4.[2] They claimed

---

1. The defendants and the union were signatories to the National Bituminous Coal Wage Agreement of 1981.

2. W.Va.Code, 21–5–4, requires an employer to timely pay all "wages" earned by an employee. "Wages" is defined to include all "accrued fringe benefits capable of calculation and payable directly to an employee[.]" W.Va.Code, 21–5–1(c).

entitlement to certain regular and graduated vacation pay provided for in the collective bargaining agreement,[3] and to liquidated damages for the untimely remittance of such vacation pay. The defendants removed the suit to federal district court and asserted that the claim was, in its essence, one for breach of the collective bargaining agreement under the Labor Management Relations Act, 29 U.S.C. § 185, *et seq.* The district court found the claim to be one of State law and remanded the case.

The defendants promptly moved to dismiss the suit on the ground of ERISA preemption. By letter of May 21, 1987, the Fayette County Circuit Court granted the defendants' motion. It relied principally on the Fourth Circuit's decision in *Holland v. National Steel Corp.*, 791 F.2d 1132 (4th Cir.1986), and concluded that that case "accurately captured the intent of congress as expressed in ERISA." A dismissal order was entered of record on June 11, 1987.

### II.

■ ERISA is a comprehensive federal statute whose purpose is to monitor and control employee benefit plans. It is applicable to all welfare plans and pension plans maintained by employers who are engaged in commerce or in an industry that affects commerce. 29 U.S.C. § 1003. A "welfare plan" is defined, in part, as any "plan, fund, or program [that] was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... vacation benefits...." 29 U.S.C. § 1002(1).

ERISA also provides for broad preemption of local law. By virtue of 29 U.S.C. § 1144(a), ERISA is deemed to supersede "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...."

We must, at the threshold, determine whether the vacation pay provided by the defendants constitutes a "welfare plan" for purposes of ERISA. We find relevant to that inquiry an administrative rule issued by the United States Department of Labor (DOL) almost contemporaneously with ERISA. 29 C.F.R. Part 2510. The rule attempts to clarify and amplify the definition of "welfare plan" set out in 29 U.S.C. § 1002(1). It spells out various employer practices which are exempted from the definition of a "welfare plan" and are, therefore, not preempted under ERISA. One such exemption is for "payroll practices," which are defined as follows:

"(b) *Payroll practices.* For purposes of Title I of the Act and this chapter, the terms 'employee welfare benefit plan' and 'welfare plan' shall not include—

\* \* \* \* \* \*

"(3) Payment of compensation, out of the employer's general assets, on account of periods of time during which the employee, although physically and mentally able to perform his or her duties and not absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) performs no duties; for example—

"(i) Payment of compensation while an employee is on vacation or absent on a holiday, including payment of premiums to induce employees to take vacations at a time favorable to the employer for

---

A fuller itemization of such benefits in W.Va. Code, 21–5–1(1), specifically lists "regular vacation" and "graduated vacation" benefits.

When an employee's work is suspended due to a labor dispute or layoff the employer must, under W.Va.Code, 21–5–4(d), "pay in full to such employee not later than the next regular payday ... wages earned at the time of suspension or layoff." If the employer fails to do so, he is subject to liquidated damages for each day he is in default, up to thirty days, at the employee's regular rate of pay. We have held that this statutory provision, relating as it does to the

underlying employment relationship, is subject to our five-year statute of limitations for actions upon a contract. W.Va.Code, 55–2–6; *Lucas v. Moore*, 172 W.Va. 101, 303 S.E.2d 739 (1983); *Farley v. Zapata Coal Corp.*, 167 W.Va. 630, 281 S.E.2d 238 (1981).

**3.** Article XIII, § (e) provides for "floating vacation" days for all employees with at least one year of seniority. Article XIV, § (a) provides for "graduated vacation" of up to thirteen days, determined on the basis of the employee's seniority.

business reasons[.]" 29 C.F.R. § 2510.3–1.

This rule was discussed, and upheld, in *California Hospital Ass'n v. Henning,* 770 F.2d 856 (9th Cir.1985). There, the Ninth Circuit considered whether a California statute that barred the forfeiture of vacation pay, and required the proration of such pay, was preempted by ERISA. The Ninth Circuit concluded for two reasons that the DOL rule exempting such plans was a reasonable interpretation of ERISA. First, the exemption of vacation plans paid from general assets was consistent with the intent of ERISA's authors, which was to provide some regulation over employers' private pension and other fringe benefit plans. The court pointed out that the need for regulation arose because of employer mismanagement of funds and the failure to pay the planned benefits.[4] Thus, the DOL rule's emphasis on the existence of a specialized fund by the employer and some administrative structure was consistent with ERISA's primary concern, i.e., control over an actual benefit plan.

As a second and related reason, the court in *Henning* noted that vacations-with-pay are intimately associated with traditional employee compensation, and have no direct relationship to a benefit plan. Thus, the *Henning* court concluded that the DOL's administrative rule exempting vacation pay from ERISA was entirely consistent with the statutory purpose:

"Traditional vacations during which the employer continued to pay the employees' regular wages presented neither of the evils Congress intended to address. Wages are ordinarily paid in cash out of the resources of the business whether the employee is at work or on vacation. There is no fund to administer and no special risk of loss or nonpayment. Nothing in the legislative history

suggests Congress intended to regulate such payments." 770 F.2d at 859.

*See also Shea v. Wells Fargo Armored Serv. Corp.,* 810 F.2d 372 (2d Cir.1987); *Golden Bear Family Restaurants, Inc. v. Murray,* 144 Ill.App.3d 616, 98 Ill.Dec. 459, 494 N.E.2d 581 (1986).

Both parties rely on *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), which identified yet another purpose behind ERISA. This purpose was to provide uniformity of regulation of employers' benefit plans so as to eliminate inconsistent or conflicting "regulatory requirements in differing States." 482 U.S. at 9, 107 S.Ct. at 2216, 96 L.Ed.2d at 10. In *Fort Halifax,* the Supreme Court considered whether a Maine statute that required a lump sum severance payment at the time of plant closure was preempted by ERISA. The Court concluded that the statute did not create a "welfare plan" subject to ERISA preemption. A plan must "embod[y] a set of administrative practices" such that variations in law from state to state would unduly burden the employer. 482 U.S. at 11, 107 S.Ct. at 2217, 96 L.Ed.2d at 11. The Court concluded that the statute did not require an employer to implement any administrative scheme at all:

"The argument that ERISA pre-empts state laws relating to certain employee benefits, rather than to employee benefit *plans,* is refuted by the express language of the statute, the purposes of the pre-emption provision, and the regulatory focus of ERISA as a whole. If a State creates no prospect of conflict with a federal statute, there is no warrant for disabling it from attempting to address uniquely local social and economic problems." 482 U.S. at 19, 107 S.Ct. at 2221, 96 L.Ed.2d at 16. (Footnote omitted; emphasis in original).[5]

---

4. The *Henning* court remarked in this regard: "In adopting ERISA Congress was primarily concerned with regulating private pension plans.... Evidence before Congress reflected two principal abuses: mismanagement of funds accumulated to finance such benefits, and failure to pay employees the benefits promised." 770 F.2d at 859. (Footnote omitted).

5. We applied the principles of *Fort Halifax* in *Bailey v. Sewell Coal Co.,* No. CC968 (W.Va. 12/17/87), a case disposed of by per curiam order. *Bailey* involved a parol severance pay policy funded from the employer's general assets. We concluded that there was no fixed commitment to pay and, therefore, no "welfare plan" for purposes of ERISA.

We do not suggest that the DOL rule regarding payroll practices and its reference to payment out of general assets, as distinguished from a specialized fund, can serve as a bright-line distinction between what is or is not exempted from ERISA. The court in *Fort Halifax* indicated this result in discussing *Holland v. Burlington Indus., Inc.*, 772 F.2d 1140 (4th Cir.1985), *aff'd mem.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986), and *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320 (2d Cir.1985), *aff'd mem.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986).

In both of these cases, the courts of appeals held that severance pay plans created by the employer were not ERISA exempt because the funds were paid out of general assets. The court in *Fort Halifax,* in speaking of these *Burlington* cases, pointed out the correct inquiry:

"ERISA's central focus on administrative integrity: if an employer has an administrative scheme for paying benefits, it should not be able to evade the requirements of the statute merely by paying those benefits out of general assets. Some severance benefit obligations by their nature necessitate an ongoing administrative scheme, but others do not. Those that do not, such as the obligation imposed in this case, simply do not involve a state law that 'relate[s] to' an employee benefit 'plan.' 29 U.S.C. § 1144(a)." 482 U.S. at 18, 107 S.Ct. at 2221, 96 L.Ed.2d at 15–16. (Footnote omitted).

The Second Circuit had no difficulty distinguishing its prior *Gilbert* decision in *Shea v. Wells Fargo Armored Serv. Corp., supra.* The latter case involved a claim for accumulated sick leave and vacation pay which were provided for under a collective bargaining agreement. Like the present case, the employees in *Shea* were terminated when their collective bargaining agreement ended. While the agreement provided for sick leave and vacation pay, the court observed: "[T]he collective bargaining agreement made no provision for the payment of these benefits upon termination of employment." 810 F.2d at 377. More central to its conclusion was its holding that these benefits could not be considered as severance pay as the employer "had no payroll severance policy." 810 F.2d at 377.

We acknowledge that the Fourth Circuit in *Holland v. National Steel Corp.*, 791 F.2d 1132 (4th Cir.1986), reached an opposite conclusion. *Holland* was decided before *Fort Halifax* and involved a claim under W.Va.Code, 21–5–4, for failure to promptly pay vacation benefits to an employee who had been laid off by National Steel. The *Holland* decision, in its analysis of the DOL rule, concluded simply: "The meaning of ['welfare plan' under] 29 U.S.C. § 1002(1) is ... quite plain and does not exempt National's vacation plans." 791 F.2d at 1135. We do not accept *Holland*'s perfunctory rejection of the DOL rule. More importantly, we note that the employer did appear to have an actual benefit plan, termed an "Income Protection Plan," which covered the specific question of when benefit payments were to be made. This fact has not been shown in this case.

■ We believe that *Fort Halifax* teaches that where a State statute, such as W.Va.Code, 21–5–4, prescribes time periods in which accrued vacation pay must be made to terminated employees, such statute is not preempted by ERISA unless the employer has a preexisting benefit plan which relates to the administration, funding, and payment of such benefits.

■ Applying the above principles, we do not believe that the trial court was correct in dismissing the complaint as a matter of law on the basis of ERISA preemption. We find that the case must be remanded for further factual development. There is no reference in the complaint, or in other papers filed herein, to the method by which vacations-with-pay are funded by the defendants nor whether such benefits are a part of the employer's administrative scheme. It is thus impossible to finally determine on the record before us whether ERISA preemption applies.

### III.

The defendants also contended in their motion to dismiss, and now on appeal, that

the plaintiffs' claim is preempted by the Labor Management Relations Act, 29 U.S.C. § 185, *et seq.* This issue was not reached by the circuit court. Since the parties address the issue, we will, for the guidance of the circuit court, review the applicable law.

The plaintiffs' claim is for the untimely payment of vacations-with-pay provided for in the collective bargaining agreement with the defendants. As a precondition to recovery, it is necessary for the plaintiffs first to prove entitlement to such pay. This, the defendants contend, invariably involves an interpretation of the collective bargaining agreement and is, therefore, preempted by federal labor law.

We start our analysis with the language of Section 301, 29 U.S.C. § 185 (1947), which traditionally has given rise to the preemption question:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

In *Textile Workers Union of Am. v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the Supreme Court held that Section 301 not only conferred jurisdiction on federal courts in such cases, but also authorized the development of a federal body of labor law to be applied. Later cases made it plain that while Section 301 did not divest state courts of jurisdiction in labor cases, *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962), the federal labor law was supreme and was to be applied by state and federal courts alike. State law to the contrary was to be preempted. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

Whether a state law claim is one for violation of a collective bargaining agreement, or is independent of that agreement, is frequently a complex issue. This com-plexity is illustrated by *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), where an injured worker was covered by a collectively bargained health and disability insurance plan. The worker claimed that the employer and insurer impermissibly cut off disability payments and, as a form of harassment, repeatedly requested that he be reexamined by physicians. He did not invoke available grievance procedures, but instead filed a suit in state court for "bad faith" handling of the claim.

The Supreme Court in *Lueck* firmly rejected the plaintiff's attempt to characterize his claim as one sounding in tort. It is federal law alone that defines the relationship between the parties to a labor contract, and "[a] state rule that purports to define the meaning or scope of a term in [such] a contract" is preempted. 471 U.S. at 210, 105 S.Ct. at 1911, 85 L.Ed.2d at 215. The Court stated further:

"The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." 471 U.S. at 211, 105 S.Ct. at 1911, 85 L.Ed.2d at 215.

Quite plainly, the issues raised in *Lueck* necessitated an interpretation of the collective bargaining agreement, particularly with respect to the duty of the employer to provide timely disability payments. *Lueck* concluded that where the resolution of a state law claim "is substantially dependent upon analysis of the terms of an agreement

made between the parties in a labor contract," state law is preempted. 471 U.S. at 220, 105 S.Ct. 1916, 85 L.Ed.2d at 221.

This is not to say that all state law claims that require reference to a collective bargaining agreement are subject to federal preemption. We relied on *Lueck* in *Yoho v. Triangle PWC, Inc.*, 175 W.Va. 556, 336 S.E.2d 204 (1985), which involved an employee who was terminated under the provisions of a collective bargaining agreement. The agreement permitted termination of injured employees who were off work for more than one year. The plaintiff contended that she had a work-related injury and had been unduly harassed by her employer. She filed a complaint based on our statute that prohibits discrimination against employees who receive workers' compensation benefits. The employer contended the claim was preempted under Section 301, but we rejected this argument, stating in Syllabus Point 2: "An action for wrongful termination under W.Va.Code § 23–5A–1 (1981) is not pre-empted by federal labor law."

The Supreme Court's recent opinion in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), is also instructive. *Lingle* involved a union employee who was discharged for filing a false workers' compensation claim. He first invoked the grievance procedure under a collective bargaining agreement that protected employees from discharge without just cause, and the matter was submitted to arbitration. He also filed a tort suit for retaliatory discharge. The lower courts held that the

tort suit was "inextricably intertwined" with the arbitration and, therefore, preempted.

The Supreme Court unanimously reversed and held: "[A]pplication of state law is preempted by Section 301 ... only if such application requires the interpretation of a collective bargaining agreement." 486 U.S. at 413, 108 S.Ct. at 1885, 100 L.Ed.2d at 423. (Footnote omitted). While the tort suit may have involved analysis of the same facts as the arbitration, it would not require an interpretation of the provisions of the collective bargaining agreement.[6]

This same preemption argument was raised in *Fort Halifax* and found to be without merit. The Court characterized Maine's severance pay statute as analogous to a minimum substantive labor standard. It refused to accept the theory that such a standard undercut collective bargaining, as this was previously considered and rejected in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The Court in *Fort Halifax* went on to conclude:

"Thus, the mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption, for 'there is nothing in the NLRA ... which expressly forecloses all state regulatory power with respect to those issues ... that may be the subject of collective bargaining.' *Malone v. White Motor Corp.*, 435 U.S. 497, 504–505, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 [451] (1978)." 482 U.S. at

---

**6.** In footnote 12 of the *Lingle* opinion, 486 U.S. at 413, 108 S.Ct. at 1885, 100 L.Ed.2d at 423, the Court explained that reference to a collective bargaining agreement for pertinent information, without any interpretation, was also permissible:

"A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state law suit is entitled. See *Baldracchi v. Pratt & Whitney Aircraft Div., United Technologies Corp.*, 814 F.2d 102, 106 (CA2 1987). Although federal law would govern the interpretation of the

agreement to determine the proper damages, the underlying state law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state law analysis would not be thereby pre-empted. As we said in *Allis–Chalmers Corp. v. Lueck*, 471 U.S., at 211, [105 S.Ct. at 1911, 85 L.Ed.2d at 215] 'not every dispute ... tangentially involving a provision of a collective-bargaining agreement is pre-empted by § 301....'"

21–22, 107 S.Ct. at 2223, 96 L.Ed.2d at 18.

 We, thus, conclude that the mere fact that W.Va.Code, 21–5–4, relates to matters which may be the subject of collective bargaining does not mean that the terms of this statute are preempted by virtue of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1947).

### IV.

For the reasons discussed above, the judgment of the Fayette County Circuit Court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.