400 S.E.2d 285

**John C. FOX, Michael A. Jacobs, Michael Oldaker, Dexter C. Vangilder, Jr., and Robert H. Wright**

v.

**UNION CARBIDE CORPORATION.**

No. 19506.

Supreme Court of Appeals of West Virginia.

Dec. 12, 1990.

Jacques R. Williams, Edward R. Kohout, Hamstead, Hamstead & Williams, Morgantown, for John C. Fox, Michael A. Jacobs, et al.

Robert M. Steptoe, Jr., Robert J. Schiavoni, Steptoe & Johnson, Clarksburg, for Union Carbide Corp.

## PER CURIAM:

This is an appeal by the plaintiffs from a summary judgment rendered in a class action filed in the Circuit Court of Harrison County against Union Carbide Chemicals and Plastics Company, Inc. (Union Carbide). The suit sought to recover statutory liquidated damages under the West Virginia Wage Payment and Collection Act (Wage Act), W.Va.Code, 21–5–1, *et seq.* The circuit court agreed with Union Carbide that, as a matter of law, the suit was barred under the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, and the Labor Management Relations Act (LMRA), 29 U.S.C. § 141, *et seq.*

The plaintiffs claim that after being laid off from their jobs, they were paid their lay-off allowance and accrued vacation pay as set out in the collective bargaining agreement. However, those benefits were not paid in a lump sum at the next regular pay day as required under W.Va.Code, 21–5–4(d) (1975),[1] but were paid out over several weekly installments. The plaintiffs claim that they were entitled to obtain the liquidated damages provided for under W.Va.Code, 21–5–4(e) (1975), which is their regular daily rate of pay for each day that payment is late up to a total of thirty days.

Union Carbide's ERISA claim is that these benefits are embodied in its collective bargaining agreement and explained in more detail in its Employee Relations Policies, which it issued to each employee. It asserts that periodic payments were provided for and had been a longstanding custom and practice. It submitted the affidavit of James Reaser, its Senior Employee Relations Manager, which described in some detail the plan and its administration. The affidavit explained that estimates were made at the beginning of each fiscal year as to the amount needed in the vacation plan account. Much the same procedure was followed under the Lay–Off Allowance Plan, which has a separate account. The Policies included a more detailed explanation of the benefit schedules for both plans, which were summarized in the collective bargaining agreement as Exhibits B and C.

The parties place substantial reliance on *Lowe v. Imperial Colliery Co.*, 180 W.Va. 518, 377 S.E.2d 652 (1988), where a motion to dismiss had been granted against the plaintiffs claiming liquidated damages for the failure to pay regular and graduated vacation pay as required by W.Va.Code, 21–5–4. In *Lowe*, we reviewed in some detail the ERISA law setting out several fundamental points in Syllabus Points 1, 2, and 3:

"1. The Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, is a comprehensive federal statute whose purpose is to monitor and control employee benefit plans. It is applicable to all

---

1. W.Va.Code, 21–5–4(d) (1975), requires that where an employee is laid off, the employer must "pay in full to such employee not later than the next regular pay day ... wages earned at the time of the suspension or layoff."

"Wages" is defined in W.Va.Code, 21–5–1(c), to include all "accrued fringe benefits capable of calculation and payable directly to an employee[.]"

welfare plans and pension plans maintained by employers who are engaged in commerce or in an industry that affects commerce.

"2. By virtue of 29 U.S.C. § 1144(a), the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, is deemed to supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.

"3. Where a State statute, such as W.Va.Code, 21–5–4, prescribes time periods in which accrued vacation pay must be made to terminated employees, such statute is not preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, unless the employer has a preexisting benefit plan which relates to the administration, funding, and payment of such benefits."

■ In *Lowe,* we concluded that the record was insufficient to warrant a motion to dismiss because there was no showing that that company had any type of benefit plan for the payment of the accrued vacation pay which would bring about an ERISA preemption. Here, the opposite is true. The lower court found a preexisting plan as to both benefits, with written administrative descriptions of the various levels of entitlement to payment, as well as separate funding. These facts were not in dispute and supported the trial court's finding.

■ Clearly, under the criteria set out in *Lowe,* the trial court was correct in concluding that suit was barred as a matter of law.[2] Accordingly, summary judgment was appropriate under the Syllabus of *Hanks v. Beckley Newspaper Corp.,* 153 W.Va. 834, 172 S.E.2d 816 (1970):

"A motion for summary judgment should be granted if the pleadings, affidavits or other evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*See Daniel v. Stevens,* 183 W.Va. 95, 394 S.E.2d 79 (1990); *First Nat'l Bank of Mor-*gantown v. McGill, 180 W.Va. 472, 377 S.E.2d 464 (1988); *George v. Blosser,* 157 W.Va. 811, 204 S.E.2d 567 (1974). We, therefore, affirm the judgment of the trial court.

Affirmed.

---

**2.** In view of our disposition of this case under the ERISA defense, we decline to discuss the