437 S.E.2d 254

**Gilbert D. ASH, et al., Plaintiffs Below, Appellants,**

v.

**RAVENS METAL PRODUCTS, INC., a Corporation, Defendant Below, Appellee.**

No. 21682.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1993.

Decided Oct. 15, 1993.

Carl E. Hostler, Hostler Law Offices, Charleston, for plaintiffs.

Brian D. Yost, Holroyd & Yost, Charleston, for defendant.

MILLER, Justice:

The plaintiffs below, Gilbert D. Ash, et al., are 149 former employees of the defendant below, Ravens Metal Products, Inc. (Ravens). Suit was filed in the Circuit Court of Wirt County on behalf of 108 of the employees contending that the defendant refused to pay them "vacation pay" they had earned prior to the initiation of a lengthy strike during which the employees were terminated from their employment. The trial court rejected the employer's arguments that the vacation pay dispute was not governed by West Virginia law, but rather by federal labor relations law, and therefore ordered the employer to remit any earned vacation pay to the employees.

The employees appeal, however, on the grounds that the trial court: (1) incorrectly calculated the vacation pay owed to the employees; (2) declined to order liquidated damages pursuant to W.Va.Code, 21–5–1, *et seq.*; (3) declined to order attorney's fees for

the employees; (4) neglected to rule on the status of the claims of twenty of the employees; and (5) refused to join forty-one of the employees to the suit by way of amendment. Ravens, on the other hand, cross-appeals, contending that the trial court erred when it: (1) applied the Wage Payment and Collection Act, W.Va.Code, 21–5–1, *et seq.*, to the facts of this case; (2) rejected its argument that the vacation pay dispute was the subject of a previous settlement agreement between the parties; and (3) rejected Ravens' argument that the vacation pay dispute was governed by the arbitration provisions of the collective bargaining agreement entered into by the union representing the employees and in effect at the time the vacation pay was earned.

The employees, union members, commenced a strike against Ravens on September 22, 1989. After protracted negotiations between the employees' union and Ravens failed to result in a new contractual agreement, Ravens terminated the employment of all the striking employees and hired permanent replacement workers. At the time the strike commenced, the employees had been employed under the terms of a collective bargaining agreement whereby they earned a specified amount of vacation time with pay by working at least one thousand hours during the preceding year. Thus, at the time of the strike in September of 1989, many of the employees of Ravens had yet to obtain their vacation pay earned the previous year, 1988. Additionally, many employees had also worked at least one thousand hours that year, 1989, and would have thereby earned vacation pay for the following year, 1990.

Shortly after commencing the strike, the employees' union filed a complaint with the National Labor Relations Board (NLRB) generally contending that Ravens had "failed to pay accrued vacation pay" since the commencement of the strike. The complaint made no distinction between vacation pay earned in 1988 and vacation pay earned in 1989. This NLRB matter was disposed of by settlement agreement between a union representative and Ravens. Ravens agreed to pay the employees for vacation time earned in 1988, but not taken in 1989, in return for the union's agreement to drop the NLRB complaint. No mention was made of the dispute over vacation pay earned in 1989 to be taken in 1990. By way of a letter dated February 1, 1990, the regional director of the NLRB informed the union representative that the NLRB acknowledged the withdrawal of the union's complaint against Ravens. This letter contained no discussion of the status of the vacation pay earned in 1989 prior to the commencement of the strike and to be taken in 1990.

As earlier noted, 108 of the employees joined in filing the instant case against Ravens in June of 1990. At some point thereafter the other forty-one employees requested that the suit be amended to include them. This request was apparently made to the then-counsel for the 108 original plaintiffs, but counsel failed to offer an amended complaint to the trial court.

Following Ravens' motion for summary judgment and the employees' response, the trial court entered an order on July 9, 1991, denying the motion for summary judgment and granting judgment for the employees. The trial court held, as a matter of law, that W.Va.Code, 21–5–1, *et seq.*, was not preempted by federal labor relations law under the facts of this case. The trial court ordered Ravens to remit vacation pay, with 10 percent interest, to any of the 108 plaintiffs who had worked at least one thousand hours for the employer in 1989 prior to the commencement of the strike.

The trial court rejected the plaintiffs' assertion that they were also entitled to liquidated damages pursuant to W.Va.Code, 21–5–4 (1975). In its judgment order, the trial court requested the then-counsel for the employees to prepare an order granting the relief sought. Despite several follow-up requests by the trial court, no proposed order was tendered. Consequently, on September 22, 1992, the trial court entered the final judgment order without the aid of counsel. It is undisputed that the trial court inadvertently miscalculated the amounts owed to the employees named in the final judgment order.

In November of 1992, new counsel for the plaintiffs sought reconsideration of the judgment order on the basis that the trial court

had mistakenly calculated the vacation pay owed to the employees. He also sought amendment of the complaint in order to add the forty-one employees seeking identical relief. The trial court's rulings on those issues are not in the record.

## I.

### A.

■ The employees argue that the trial court erred when it miscalculated the amounts owed to them for vacation pay in its order dated September 22, 1992. Ravens acknowledges that the trial court miscalculated those damages. This miscalculation apparently occurred because the trial court was not supplied with sufficient information to accurately make the wage calculations. Moreover, the trial court appears to have neglected naming several of the employees involved in the suit in its award of damages.[1] Because both parties have acknowledged the wage calculation problem, we apply Syllabus Point 5 of *In re Boso,* 160 W.Va. 38, 231 S.E.2d 715 (1977), in this nonjury case:

" 'When the finding of a trial court in a case tried by it in lieu of a jury is against the preponderance of the evidence, is not supported by the evidence, or is plainly wrong, such finding will be reversed and set aside by this Court upon appellate review.' Point 4, Syllabus, *Smith v. Godby,* 154 W.Va. 190, 174 S.E.2d 165 (1970)."

### B.

■ The employees also contend that the trial court erred when it denied their claims for liquidated damages pursuant to W.Va. Code 21–5–4(e), which states, in pertinent part:

"If a person, firm or corporation fails to pay an employee wages as required under this section, such person, firm or corporation *shall, in addition to the amount due, be liable to the employee for liquidated damages* in the amount of wages at his regular rate for each day the employer is in default, until he is paid in full, without rendering any service therefor: Provided, however, that he shall cease to draw such wages thirty days after such default." (Emphasis added).

The trial court acknowledged that the statute provided for liquidated damages, but nevertheless denied those damages. The trial court reasoned that an allowance of such damages would be unfair to Ravens because the company had "strong enough possibilities of having correctly interpreted the law that they ('Ravens'), should not be penalized for standing by law they reasonably believed to be correct." However, as we discuss in Part II(A), *infra,* Ravens' legal position on the preemption issue could not be deemed correct in light of our decision in *Lowe v. Imperial Colliery Co.,* 180 W.Va. 518, 377 S.E.2d 652 (1988),[2] which was decided before the employees were fired in this case.

We addressed the statutory basis for a liquidated damage claim at some length in *Farley v. Zapata Coal Corporation,* 167 W.Va. 630, 281 S.E.2d 238 (1981). We pointed out that liquidated damages are provided for in W.Va.Code, 21–5–4(e):

"Under the provisions of [W.Va.Code 21–5–1 *et seq.*], when an employee is laid off for any reason the employer must pay the employee, no later than the next regular payday, wages earned at the time of the layoff. W.Va.Code § 21–5–4(d). If the employer fails in this duty, he is held liable, *in addition to wages due, for liquidated damages equal in amount to thirty days' wages.*" 167 W.Va. at 635–36, 281 S.E.2d at 242. (Emphasis added).

---

1. Ravens does not respond to the employees' contention that twenty of the employees were inadvertently left out of the trial court's order. The employees who were participants in the underlying suit, but who were inadvertently left out of the trial court's order, do not include those employees who first sought to be included in the suit after the trial court's final order. The status of the latter group is addressed in Part I(D), *infra.*

2. By addressing the question of whether an employer's good faith belief that it did not violate the Wage Payment and Collection Act is a defense to statutory liquidated damages, we do not imply that such a defense exists. There is no language in the act that affords such a defense. We touch on the issue only because it is clear that Ravens had no factual or legal basis for asserting such a defense.

The use of the word "shall" in W.Va.Code 21–5–4(e) in reference to the payment of liquidated damages is determinative of this issue. As we stated in Syllabus Point 1 of *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982): "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Thus, W.Va.Code 21–5–4(e), prescribes a mandatory requirement that liquidated damages are to be paid whenever an employer fails to "pay an employee wages as required under [W.Va.Code 21–5–4.]" Therefore, upon remand, liquidated damages must be awarded to those employees who have not been paid wages as required by W.Va.Code 21–5–4.

### C.

█ The employees also submit that the trial court erred when it failed to award attorney's fees to them. There is nothing in the record that suggests why the trial court did not grant reasonable attorney's fees. The statutory right to attorney's fees is contained in W.Va.Code, 21–5–12(b) (1975).[3] Our standard for awarding attorney's fees in successful wage collection cases was stated in Syllabus Point 3 of *Farley v. Zapata Coal Corporation, supra:*

> "An employee who succeeds in enforcing a claim under W.Va.Code Chapter 21, article 5 should ordinarily recover costs, including reasonable attorney fees unless special circumstances render such an award unjust."

3. W.Va.Code, 21–5–12(b), states, in pertinent part: "The court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant."

4. Our general rule on the reasonableness of attorney's fees is set out in Syllabus Point 4 of ·*Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986):
   "Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attor-

*See also* Syllabus Point 2, *Amick v. C & T Dev. Co.,* 187 W.Va. 115, 416 S.E.2d 73 (1992).

█ Ravens argues that there are special circumstances that make the award of attorney's fees unjust in this case. It points out that the employees' initial counsel failed to submit a proposed order to the trial court despite the court's request that he do so. It further contends that it was the fault of the employees' initial counsel that the trial court was unable to accurately calculate the vacation wages owed to the employees and that the additional employees were not added to the suit.

We do not agree with Ravens' contentions. While we do not condone the actions of the employees' original counsel, and the record is unclear as to the cause of the delay, Ravens did owe the wages to the employees. Both parties had an obligation to supply the trial court with accurate information as to the employees' wages. Indeed, an employer who owes wages is in a better position than individual employees to have this information. We decline to find any just basis for the denial of the statutory award for attorney's fees in this case. The fact remains that Ravens refused to pay its employees the vacation pay they had earned after they had requested such payment. In this case an award of attorney fees is not unjust, and upon remand the trial court is instructed to award reasonable attorney's fees.[4]

### D.

█ The next claim of error concerns the trial court's failure to join forty-one additional employees to this litigation. Following the

ney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; · (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

trial court's final order in this matter, entered September 22, 1992, the employees' new counsel sought to amend the complaint and add the forty-one employees who were not included in the original action. New counsel contended that the original lawyer representing the employees was asked to include the forty-one before the entry of the trial court's final order, but failed to do so. Apparently, the trial court denied the latent motion to amend.[5] We are informed that a separate action was subsequently filed on behalf of the forty-one employees. However, it is contended on behalf of the forty-one excluded employees that the trial court has discretion to allow the complaint to be amended pursuant to Rule 15 of the West Virginia Rules of Civil Procedure.

We emphasize first that Rule 15 of the West Virginia Rules of Civil Procedure should ordinarily be liberally construed. As we stated in Syllabus Point 6, in part, of *Murredu v. Murredu*, 160 W.Va. 610, 236 S.E.2d 452 (1977): "Rule 15 of the Rules of Civil Procedure relating to amended and supplemental proceedings ... should be liberally construed." We are not cited nor have we found cases that apply Rule 15 of the West Virginia Rules of Civil Procedure or its federal counterpart to amend a complaint to add additional parties *after a final judgment.* Moreover, this was not a class action. We decline to extend the right to amend simply because there is now a suit pending in the circuit court on behalf of the forty-one employees. It can be consolidated with this suit on remand.

## II.

### A.

Turning to Ravens' cross-assignments of error, we first address its argument that W.Va.Code, 21–5–4, is preempted by Section 301 of the Labor Management Relations Act (LMRA). We discussed this issue in *Lowe v.*

*Imperial Colliery Co.,* 180 W.Va. 518, 377 S.E.2d 652 (1988), where we recognized that the LMRA will control in disputes involving the *interpretation* of a collective bargaining agreement.[6] In *Lowe*, as here, employees were seeking to collect wages under our Wage Payment and Collection Act. We reviewed *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206, 221 (1985), where the United States Supreme Court concluded that when the resolution of a state law claim "'is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract,'" state law is preempted. 180 W.Va. at 523–24, 377 S.E.2d at 658. However, we also quoted from the Supreme Court case of *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410, 423 (1988), and recognized that preemption of state law does not occur every time a collective bargaining agreement forms the basis of a state law claim, but rather, "'*only* if such application requires the *interpretation* of a collective bargaining agreement.'" 180 W.Va. at 524, 377 S.E.2d at 658. (Emphasis added).

In note 12 of the *Lingle* opinion, 486 U.S. at 413, 108 S.Ct. at 1885, 100 L.Ed.2d at 423, the Supreme Court explained that the reference in a state law claim to a collective bargaining agreement, without any need for interpretation of the agreement, was permissible:

> "A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state law suit is entitled. See *Baldracchi v. Pratt & Whitney Aircraft Div., United Technologies Corp.,* 814 F.2d 102, 106 (CA2 1987). Although federal law would govern the interpretation of the agreement to de-

---

5. The employees' counsel contends that the trial court, "denied the motion on December 29, 1991 by reasoning that the [employees] had a duty to ensure that they had been included in the initial complaint." There is nothing in the record before us showing the trial court's judgment on this motion or its reasoning.

6. We stated in Syllabus Point 4 of *Lowe:* "While Section 301 of the [Labor Management Relations Act], 29 U.S.C. § 185 (1947), does not divest state courts of jurisdiction in labor cases, the federal labor law is supreme and is to be applied by the state and federal courts alike. State law to the contrary is preempted."

termine the proper damages, the underlying state law claim, not otherwise preempted, would stand.... As we said in *Allis–Chalmers Corp., v. Lueck,* 471 U.S. at 211, [105 S.Ct. at 1911, 85 L.Ed.2d at 215] 'not every dispute ... tangentially involving a provision of a collective-bargaining agreement is pre-empted by § 301....' "

Finally, in *Lowe,* we found highly relevant the Supreme Court case of *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 21–22, 107 S.Ct. 2211, 2223, 96 L.Ed.2d 1, 18 (1987), which involved a challenge to Maine's wage payment statute on the basis that it violated the LMRA. In rejecting that challenge, the Supreme Court stated:

> " '[T]he mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption, for "there is nothing in the NLRA ... which expressly forecloses all state regulatory power with respect to those issues ... that may be the subject of collective bargaining." *Malone v. White Motor Corp.,* 435 U.S. 497, 504–505, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 [451] (1978).' " 180 W.Va. at 524, 377 S.E.2d at 658–659. (Citation omitted).

■ In Syllabus Point 5 of *Lowe,* we concluded that, although the federal law controls the interpretation of a collective bargaining agreement, it does not preempt a state law claim which does not involve interpretation of that contract:

> "The mere fact that W.Va.Code, 21–5–4, relates to matters which may be the subject of collective bargaining does not mean that the terms of this statute are preempted by virtue of Section 301 of the [Labor Management Relations Act], 29 U.S.C. § 185 (1947)."

In *Lowe,* we did not have a copy of the collective bargaining agreement, and thus, could not resolve the issue. Therefore, we remanded the case.

■ Ravens argues that W.Va.Code, 21–5–4, is preempted because an interpretation of the collective bargaining agreement under which the vacation pay was earned is necessary. We disagree. Interpretation of the collective bargaining agreement is not at issue—both sides acknowledge that the agreement called for vacation pay to be remitted by Ravens to the employees if they worked one thousand hours in a year.[7] The employees assert that they have, in fact, worked the requisite amount of time. The employer baldly asserts "that under the collective bargaining agreement [the employees] have no vacation entitlement."

Despite asserting that the application of W.Va.Code, 21–5–4, requires an interpretation of the collective bargaining agreement, the employer fails to state what interpretation is required. We conclude that no interpretation is required, only a calculation of the agreement's vacation pay provisions to the actual pay scales of the employees. Thus, we find that the trial court did not err in finding that W.Va.Code, 21–5–4, was not preempted by federal labor relations law.

**B.**

■ Ravens also argues that the employees' action should be considered barred because the collective bargaining agreement, under which the vacation pay was earned, contains a binding arbitration procedure that governs complaints by employees concerning vacation pay.[8] For support, Ravens cites *Board of Education v. W. Harley Miller, Inc.,* 160 W.Va. 473, 236 S.E.2d 439 (1977). However, that case dealt with an arbitration clause in a construction contract. It had nothing to do with statutorily created rights such as those asserted by the employees. Here, there is express language in W.Va.

---

7. The pertinent portion of Section 2 of Article 18 of the collective bargaining agreement states: "To qualify for vacation with pay, an employee must have at least 1000 hours during the preceding calendar year or 800 hours if illness prevents him from working 1000 hours."

8. The employer cites to Article 19 of the collective bargaining agreement, that provides for binding arbitration to resolve "any controversy or complaint" between the parties "which involves the interpretation or application of or compliance with the provisions of [the collective bargaining] [a]greement."

Code, 21–5–10 (1975), precluding contractual alteration of those rights: .

"Except as provided in section thirteen [§ 21–5–13],[9] no provision of this article may in any way be contravened or set aside by private agreement, and the acceptance by the employee of a partial payment of wages shall not constitute a release as to the balance of his claim and any release required as a condition of such payment shall be null and void."

We have addressed the issue of what role a collective bargaining agreement may have in altering or limiting employees' statutory rights. In *Davis v. Kitt Energy Corp.,* 179 W.Va. 37, 365 S.E.2d 82 (1987), we recognized the primacy of the federal law in this area of collective bargaining agreements, but pointed out that such an agreement could not supersede statutory rights:

"The United States Supreme Court has considered on several occasions whether rights arising from a collective bargaining or wage agreement can in effect supplant or diminish statutory rights, and has concluded that they may not. *E.g., McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). *Barrentine* involved a wage agreement that conflicted in part with the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* The Court stated:

'[W]e have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the

purposes" of the statute and thwart the legislative policies it was designed to effectuate.' (Citations omitted.) 450 U.S. at 740, 101 S.Ct. at 1445, 67 L.Ed.2d at 653."

179 W.Va. at 43, 365 S.E.2d at 88.

Earlier, in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court decided that even though the employee sought to arbitrate a discrimination dispute through the collective bargaining agreement and lost, this did not foreclose his right to pursue his discrimination claim under Title VII of the Civil Rights Act of 1964:

"Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver." 415 U.S. at 51–52, 94 S.Ct. at 1021, 39 L.Ed.2d at 160. (Citations omitted).

In *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), which involved wage claims pursuant to the employees' rights under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* the Supreme Court stated that these rights of the employees are "independent of the collective bargaining process. They devolve on [employees] as individual workers, not as members of a collective organization. They are not waivable." 450 U.S. at 745, 101 S.Ct. at 1447, 67 L.Ed.2d at 657.[10]

9. W.Va.Code, 21–5–13 (1975), provides: "The commissioner shall make rules and regulations to the extent necessary to effectuate the purposes of this article, in accordance with the provisions of chapter twenty-nine-A [§ 29A–1–1 et seq.] of the Code of West Virginia, as amended."

10. The two major reasons cited by the *Barrentine* Court for questioning the adequacy of the arbitration process to protect an employee's substantive statutory rights were: (1) the aims of the collective group may differ from that of the individual and the union may not elect to vigorously pursue an employee's grievance, and (2) arbitra-

tors may not be competent to decide an employee's substantive *statutory rights. 450 U.S. at 742–45, 101 S.Ct. at 1446–47, 67 L.Ed.2d at 655–56.* Moreover, as under W.Va.Code, 21–5–4, the Court reasoned:

"[U]nder the FLSA, courts can award actual and liquidated damages, reasonable attorney's fees, and costs. 29 U.S.C. § 216(b). An arbitrator, by contrast, can award only that compensation authorized by the wage provision of the collective-bargaining agreement. He 'is confined to interpretation and application of the collective bargaining agreement' and his 'award is legitimate only so long as it draws its

We, therefore, conclude that an arbitration clause of a collective bargaining agreement cannot nullify the statutory rights given to employees under the West Virginia Wage Payment and Collection Act, W.Va.Code, 21–5–1, *et seq.* Consequently, the trial court did not err in rejecting this claim.

### C.

Ravens also contends that the subject matter of this action was the subject of an earlier settlement between the parties. They contend that the settlement reached between the union and Ravens in January of 1990 covered the issue of vacation pay earned in 1989 and to be taken in 1990. The trial court did not comment on this issue, and the record is incomplete in that regard. The record only shows that the settlement itself involved an agreement on the part of Ravens to pay vacation wages to union members for vacation earned in 1988, but not yet taken at the time of the strike in 1989. It makes no mention of the issue disputed herein: the vacation pay earned in 1989 to be taken in 1990.

Again, we refer to W.Va.Code, 21–5–10, which not only states that the statutory provisions at issue herein, W.Va.Code, 21–5–4, may not be contravened by a private agreement, but neither may "the acceptance by an employee of a partial payment of wages ... constitute a release as to the balance of his claim [and] any release required as a condition of such payment shall be null and void." Thus, it appears that the employees could not have bargained away their vacation pay earned in 1989 in return for payment of their vacation pay earned in 1988. However, because this issue was not fully briefed or developed below, and we are remanding this case for other reasons, we will allow the parties to develop this issue further upon remand before the trial court.

### III.

Based upon the foregoing, this case is affirmed in part, reversed in part, and remand-

ed to the Circuit Court of Wirt County consistent with the terms of this opinion.

Affirmed in part, Reversed in part, and Remanded.

---

essence from the collective bargaining agreement.' *Steelworkers v. Enterprise Wheel & Car Corp.,* [363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960)]. It is most

unlikely that he will be authorized to award liquidated damages, costs, or attorney's fees." 450 U.S. at 745, 101 S.Ct. at 1447, 67 L.Ed.2d at 656.