498 S.E.2d 702

Linda Sue **TOLLIVER** and Dana
L. Tolliver, Plaintiffs Below,
Appellants,

v.

**THE KROGER COMPANY,** a corporation
conducting business in West Virginia,
Terry Lucas, an individual, Philip
Helms, an individual and Fred Fenton,
an individual, Defendants Below, Appel-
lees.

No. 23940.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 17, 1997.

Decided Nov. 21, 1997.

Jerry Blair, Huntington, for Appellants.

Edward M. Kowal, Jr., Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for Appellees.

DAVIS, Justice:

This is an appeal by Linda Sue Tolliver and Dana L. Tolliver, appellants/plaintiffs, from an order of the Circuit Court of Cabell County granting partial summary judgment to The Kroger Company, Terry Lucas, Philip Helms and Fred Fenton, appellees/defendants in an action alleging intentional infliction of emotional distress and assault and battery. The Tollivers contend that the circuit court erred in ruling that their causes of action required resolution through the grievance process established by a collective bargaining agreement and, therefore, were barred from being litigated in circuit court. The Tollivers further contend that the circuit court erred in ruling, as an alternative, that their causes of action were barred because they failed to properly plead a *deliberate intention* cause of action against the defendants under W.Va.Code § 23-4-2(c)(2)(i) (1994). We find that the Tollivers' claim for intentional infliction of emotional distress had to be resolved through the grievance process established by the collective bargaining agreement. We further find that the Tollivers' failed to properly plead a deliberate intention cause of action against the defendants pursuant to W.Va.Code § 23-4-2(c)(2)(i). Therefore, we affirm the circuit court's order granting partial summary judgment on those two issues.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Linda Sue Tolliver (Mrs. Tolliver) has been employed by The Kroger Company (Kroger) since 1972. Mrs. Tolliver is a member of the United Food and Commercial Workers Union Local # 347 (Union). The Union and Kroger had a collective bargaining agreement (CBA) which governed all employer and employee disputes.[1]

In 1994, Mrs. Tolliver and her spouse, Dana L. Tolliver,[2] filed the instant action against Kroger and three of its store managers, Terry Lucas, Philip Helms and Fred Fenton.[3] The complaint alleged Mrs. Tolliver was the victim of age and gender discrimination caused by Kroger and the three other defendants.[4] The complaint also alleged that Terry Lucas committed assault and battery against Mrs. Tolliver. Additionally, the complaint asserted that the defendants intentionally inflicted emotional distress upon Mrs. Tolliver.[5]

The assault and battery allegation grew out of a dispute between Mrs. Tolliver and Terry Lucas. In December of 1992, Mrs. Tolliver was employed as a head deli clerk at a Kroger store in which Mr. Lucas was a manager. It appears that Mr. Lucas became upset upon learning Mrs. Tolliver "failed to make the necessary preparations to fulfill Christmas orders in the deli." Mr. Lucas confronted Mrs. Tolliver over the matter and "a yelling incident occurred." Mrs. Tolliver alleged "that Mr. Lucas followed her to the employee locker room and 'got a hold of my arm' and 'jerked me' through a door." This one incident formed the basis for the assault and battery claim.

Mrs. Tolliver was suspended for three days as a result of the confrontation with Mr. Lucas. Mrs. Tolliver filed a grievance over her suspension. The suspension was resolved through the CBA grievance procedure. The record is unclear as to whether Mrs. Tolliver also filed a separate grievance involving the alleged assault and battery by Mr. Lucas.

At some point in 1993, Mrs. Tolliver transferred to another Kroger store that was managed by both Mr. Fred Fenton and Mr. Philip Helms. While at this new store Mrs. Tolliver was "demoted" to working at a check-out register. Mrs. Tolliver asserted that Mr. Fenton yelled at her in an abusive and humiliating way on a regular basis and without justification. Mrs. Tolliver also alleges that Mr. Helms ordered Mr. Fenton to watch her while she performed inventories. The job demotion and conduct of Messrs. Fenton and Helms formed the basis of Mrs. Tolliver's claim for intentional infliction of emotional distress. To what extent this conduct was processed through the CBA grievance procedure is unclear from the record.

What is clear from the record is that all employees covered by the CBA had to exhaust the grievance procedure before seeking any other form of redress. Article 5 of the CBA sets forth with specificity the dispute resolution procedure between Kroger and the Union. Article 5 states:

*Article 5.  Dispute Procedure.*

---

1. The collective bargaining agreement was entered into by The Kroger Company of Charleston, West Virginia and Local No. 347, affiliated with the United Food and Commercial Workers International Union and the AFL–CIO. The CBA was executed on May 1, 1991, and was effective from October 7, 1990 through October 8, 1994. By its own language, the CBA was automatically renewed from year to year unless proper notice was given by either party of their desire to terminate or make changes in the CBA.

2. Mrs. Tolliver's spouse joined in the complaint by alleging a claim for loss of consortium.

3. For ease of reference, Kroger's store managers, Terry Lucas, Philip Helms and Fred Fenton will be collectively referred to as defendants.

4. The circuit court denied defendant's motion for summary judgment on the claim of age and gender discrimination. Therefore, those claims are not before this Court.

5. The complaint inartfully attempted to allege other types of torts. However, the allegations can only be interpreted, at best, as unintelligible versions of the intentional infliction of emotional distress claim. We point out to the Bar that while our rules of pleading a cause of action in general are liberal, this approach is not a license for asserting allegations which cannot reasonably be interpreted as setting forth a cause of action.

. . . .

*Section 5.11   It is understood and agreed that all employees within the bargaining unit covered by this Agreement must exercise all their rights, privileges, or necessary procedures under this Agreement, International and Local Union Constitution, in the settlement of any and all complaints or grievances filed by such employees before taking any action outside of the scope of this Agreement for the settlement of such grievances.*

At the conclusion of discovery, all four defendants moved for summary judgment. The circuit court denied summary judgment on the age and gender discrimination claim. The circuit court ruled, as a matter of law, that the intentional infliction of emotional distress and assault and battery claims were subject to resolution under the collective bargaining agreement.   As an alternative basis for granting partial summary judgment, the circuit court ruled that, even if the collective bargaining agreement did not bar the Tollivers' claims, the claims were barred by Mrs. Tolliver's failure to plead exemption from immunity provided to the defendants for their intentional infliction of emotional distress pursuant to the West Virginia Workers' Compensation Act. The Tollivers thereafter brought this appeal from the partial summary judgment order.

## II.

### STANDARD OF REVIEW

■   We are asked to review the circuit court's award of partial summary judgment in favor of the defendants.   We exercise plenary review over a circuit court's decision to grant partial summary judgment.   Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed de novo.").

■   We have repeatedly held that under Rule 56(c) of the West Virginia Rules of Civil Procedure, " ' "[a] motion for summary judgment should be granted only when it is clear that no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).' Sylla-

bus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 1, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995).   Moreover, we have explained in syllabus point 5 of *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995) that:

> Roughly stated, a genuine issue for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party.   The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts.   A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

We are obligated to resolve all reasonable doubts in favor of the non-moving party. For summary judgment to be proper, the movant must show that there is an absence of evidence to support the non-movant's case and a determination that the evidence is so one-sided that the movant must prevail as a matter of law.   "These principles apply whether summary judgment is granted on the merits of a claim or on an affirmative defense." *Conrad v. ARA Szabo,* 198 W.Va. 362, 370, 480 S.E.2d 801, 809 (1996).   "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Payne v. Weston,* 195 W.Va. 502, 506, 466 S.E.2d 161, 165 (1995).   The basis of summary judgment in this case involves two legal issues: (1) the application of a collective bargaining agreement to intentional tort allegations, and (2) the sufficiency of pleading an intentional tort against an employer.   We address both matters below.

### III.

### DISCUSSION

#### A.   Section 301 of the Labor Management Relations Act:

#### Its Application to an Intentional Tort Claim

The parties did not brief or argue the application of Section 301 of the Labor Man-

agement Relations Act of 1947, 29 U.S.C. § 185 (1947), to the intentional tort claims.[6] This issue, however, is quasi-jurisdictional in nature. We therefore must address the jurisdictional question.[7] *See* Syl. Pt. 2, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995) ("Where neither party to an appeal raises, briefs, or argues a jurisdictional question presented, this Court has the inherent power and duty to determine unilaterally its authority to hear a particular case. Parties cannot confer jurisdiction on this Court directly or indirectly where it is otherwise lacking."). This Court stated in *Satterfield v. Claypole*, 190 W.Va. 384, 387, 438 S.E.2d 564, 567 (1993) that "[c]ollective-bargaining agreements are the principal form of contract between an employer and a labor organization. Individual union members, who are often the beneficiaries of provisions of collective bargaining agreements, may bring suits on these contracts [in federal court] under Sec. 301." *See* Syl. Pt. 1, *Chapple v. Fairmont General Hosp., Inc.*, 181 W.Va. 755, 384 S.E.2d 366 (1989) ("Although state and federal courts have concurrent jurisdiction in actions involving an alleged breach of a collective bargaining agreement, the substantive law to be applied in suits under Sec. 301(a) of the Labor Management Relations Act is federal law."); Syl. Pt. 4, *Lowe v. Imperial Colliery Co.*, 180 W.Va. 518, 377 S.E.2d 652 (1988) ("While Section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185 (1947), does not divest state courts of jurisdiction in labor cases, the federal labor law is supreme and is to be applied by state and federal courts alike. State law to the contrary is preempted.").

■ We held in syllabus point 1 of *Greenfield v. Schmidt Baking Company, Inc.*, 199 W.Va. 447, 485 S.E.2d 391 (1997), that "[a]n application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1947) (1994 ed.), only if such application requires the

interpretation of a collective-bargaining agreement." We also said in *Greenfield* that:

[T]he mere existence of a [collective bargaining agreement] between the parties is not sufficient to require pre-emption of a state-law claim. *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93, 110 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206, 215 (1985) ("[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301."). The question that must be asked, according to the standard established by the Supreme Court of the United States, is whether the application of state-law requires the interpretation of a CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. [399], 413, 108 S.Ct. [1877], 1885, 100 L.Ed.2d [410], 423 [1988].

*Greenfield*, 199 W.Va. at 461, 485 S.E.2d at 405.

In reviewing the underlying conduct to the intentional tort claims in this case, we opine that Section 301, *if properly raised*, preempts the state law claim of intentional infliction of emotional distress. The totality of Mrs. Tolliver's intentional infliction of emotional distress claim, based upon the record before us, is that her supervisors "watched her perform inventories" and "yelled at her." Thus, Mrs. Tolliver's claim centered on her job duties and the performance of those duties. The purpose of a CBA is to resolve disputes between the employer and the employee relating to the rates of pay, hours of work, and conditions of employment.

Article 1 of the CBA succinctly set forth the parameters of the CBA. It states:

---

**6.** The brief of Kroger mentions only in passing Section 301. However, no argument as to its application is made in this proceeding. In fact, the comments made suggests that Kroger intended to waive consideration of Section 301.

**7.** We label the issue quasi-jurisdictional because it involves the question of whether federal law or state law is to be applied to this case. As noted in the body of the opinion, this Court has concurrent jurisdiction with federal courts on matters arising under the Labor Management Relations Act.

*Article 1.   Intent and Purpose.*

The Employer and the Union each represents that the purpose and the intent of this Agreement is to promote cooperation and harmony, to recognize mutual interest, to provide a channel through which information and problems may be transmitted from one to the other, to formulate rules to govern the relationship between the Union and the Employer, to promote efficiency and service and to set forth herein the basic agreements covering rates of pay, hours of work and conditions of employment.

There can be no dispute.   The very essence of Mrs. Tolliver's claim resulted from her job performance and her work relationship with her immediate supervisor.   As such, resolution of Mrs. Tolliver's intentional infliction of emotional distress claim necessarily requires interpretation and application of the CBA.

Had Kroger asserted Section 301 preemption, at the trial court level or on appeal for the first time, our inquiry and legal analysis would terminate on the intentional infliction of emotional distress claim.   However, Kroger's failure to raise Section 301 preemption requires that this Court discuss an issue of first impression:   May Section 301 preemption be waived when it is not argued at the trial court or appellate level?

### B.   Waiver of Section 301

█  Only three federal courts have addressed the issue of waiving Section 301 preemption on appeal by failing to raise the issue at the trial court level.   The leading case that discusses Section 301 preemption, and its waiver when not raised at the trial court level, is *Johnson v. Armored Transport of California, Inc.,* 813 F.2d 1041 (9th Cir. 1987).[8]   In *Johnson* the employer failed to raise Section 301 preemption, at the district court level, as a defense to the employee's state law claim of wrongful discharge.   From an adverse decision in the lower court, the employer argued for the first time on appeal that the employee's state law claim of wrongful discharge was preempted by Section 301. The Ninth Circuit rejected the employer's Section 301 preemption argument.   The court held that the employer "waived the argument that section 301 preempts the state law wrongful discharge claim because the argument was not properly preserved in the district court."   *Id.,* 813 F.2d at 1044.   Even though *Johnson* and *Sweeney* adopted a waiver rule for Section 301 preemption, one federal circuit has ruled differently.[9]

*Johnson* distinguished the ruling of the United States Supreme Court in *International Longshoremen's Association, AFL–CIO v. Davis,* 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986) (*Davis* ).   *Davis* held that the federal law preemption defense provided in National Labor Relations Act, 29 U.S.C. §§ 151–168, "is in the nature of a challenge to a court's power to adjudicate that may be raised at any time."   *Id.,* 476 U.S. at 382, 106 S.Ct. at 1907.   *Johnson* interpreted *Davis* by interpreting *Davis* to say " 'a preemption argument that affects the *choice of forum* rather than the *choice of law* is not waivable; thus, it can be raised for the first time on appeal.' "   *Johnson,* 813 F.2d at 1043, quoting *Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1497 (9th Cir.1986) (emphasis added).   *Johnson* concluded that preemption under Section 301 affected only the *choice of law,* not the *choice of forum.*   Therefore, Section 301 could be waived on appeal when not raised at the trial court level.

While the *Johnson* opinion provides some guidance for responding to a party's failure to raise Section 301 preemption at the trial court level *and* on appeal, we believe the *Davis* opinion provides a better analysis for ultimate resolution of the issue.   *Johnson* permits waiver of Section 301 preemption even when the defense is raised on appeal. Therefore, we decline to follow *Johnson.*   Instead, we partially adopt the position taken

---

8.   *Johnson* was cited and followed by the court in *Sweeney v. Westvaco Company,* 926 F.2d 29, 40 (1st Cir.1991) ("[I]n an appropriate case, a party can waive § 301 pre-emption; the parties do not have an absolute right to raise that argument at any stage they wish in the proceedings.")

9.   *See, National Metalcrafters v. McNeil,* 784 F.2d 817, 826 (7th Cir.1986) (discussing the waiver rule, but declined to adopt it after inferring from the facts presented in the lower court that Section 301 preemption was raised).

in *Davis*. *Davis*, as pointed out previously, involved the issue of preemption in the context of the National Labor Relations Act (NLRA). We believe the *Davis* reasoning on preemption under the NLRA is persuasive.

*Davis* originated in an Alabama state trial court. In *Davis* the defendant raised the preemption defense under the NLRA for the first time in a motion for judgment notwithstanding the verdict. The Alabama trial court denied the motion. The Alabama Supreme Court affirmed the trial court holding that preemption was waived because it was not raised until after the jury returned an adverse verdict. The United States Supreme Court rejected the Alabama Supreme Court's position, and held that "when a claim of ... pre-emption is raised, it must be considered and resolved by the state court." *Davis*, 476 U.S. at 393, 106 S.Ct. at 1913.[10]

In view of *Johnson's* adoption of waiver for Section 301 preemption and *Davis'* holding that preemption under NLRA is never waivable if raised, we rule as follows. We hold that failure on the part of a party to properly raise preemption under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1947), either before the circuit court or on appeal, constitutes a waiver of consideration and application of Section 301 preemption by this Court. *See* Syl. Pt. 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."). On the other hand, should a party fail to raise Section 301 preemption at the circuit court level, but properly raises and briefs the issue on appeal, the waiver rule will not bar consideration of the issue on the merits. *See Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1215 (6th Cir.1987) (allowing Section 301 preemption to be raised for first time on appeal). *See also* Syl. Pt. 1, *State Road Commission v. Ferguson*, 148

W.Va. 742, 137 S.E.2d 206 (1964) ("Where objections were not shown to have been made in the trial court, *and the matters concerned were not jurisdictional in character*, such objections will not be considered on appeal.") (emphasis added).

In the instant proceeding, the Section 301 preemption defense was not raised explicitly at the trial court level, nor was it raised and briefed before this Court. Therefore, Section 301 preemption has been waived and will not be considered in resolving the issues on appeal.

### C. Application of the CBA to Intentional Torts

The circuit court found, under state law principles, that Mrs. Tolliver's intentional tort claims were subject to being resolved by the grievance procedures found in the CBA. The record clearly reflects that Mrs. Tolliver invoked the grievance procedures, at least for some of the allegations, but later apparently abandoned the grievance.[11] Therefore, the legal foundation of both claims turn on whether Mrs. Tolliver had to exhaust the grievance procedure.

We addressed the issue of exhaustion of the grievance process in *Chapple, supra*. The plaintiff in *Chapple* filed a wrongful discharge action against her former employer. The plaintiff initially invoked the grievance procedure that existed pursuant to a collective bargaining agreement. The plaintiff failed to exhaust the procedures and filed a civil action. The circuit court granted summary judgment to the employer after determining the plaintiff failed to exhaust the grievance procedure as was required by the collective bargaining agreement. Upon review by this Court, we initially determined that state law was preempted by Section 301 of the Labor Management Relations Act. Applying federal legal principles, we deter-

---

10. *Davis* did not reach the question of waiver when a party fails to raise Section 301 preemption at any step in the litigation. Under this Court's ruling today, Section 301 preemption is waivable only if *never raised*. Ideally, a party should always raise the defense in its answer to a complaint. However, failure to do so will not constitute a waiver. Once the issue is raised at the trial level or on appeal, it must and will be resolved on the merits.

11. The record is not clear as to whether Mrs. Tolliver actually abandoned the grievance procedures, or reached a non-monetary settlement. It is clear from the record that her grievance did not reach binding arbitration.

mined that the plaintiff had to exhaust her remedies unless she could demonstrate that the union breached its duty to adequately or fairly represent her grievance. The plaintiff could not meet this exception to the exhaustion requirement. In affirming summary judgment, we held in syllabus point 2 of *Chapple* that "Failure to exhaust the remedies outlined in a collective bargaining agreement's grievance procedure will preclude an aggrieved employee from bringing a civil action, unless the employee falls within an identified exception." *See* Syl. Pt. 1, *Board of Ed. of Berkeley County v. W. Harley Miller, Inc.,* 160 W.Va. 473, 236 S.E.2d 439 (1977) ("Where parties to a contract agree to arbitrate either all disputes, or particular limited disputes arising under the contract, and where the parties bargained for the arbitration provision, such provision is binding, and specifically enforceable, and all causes of action arising under the contract which by the contract terms are made arbitrable are merged, in the absence of fraud, into the award of the arbitrators.").

Resolving the question of Mrs. Tolliver's purported obligation to seek relief on her tort claims through exhaustion of the grievance process involves answering two questions: (1) was the claim of intentional infliction of emotional distress resolvable under the collective bargaining agreement, and (2) was the claim of assault and battery resolvable under the collective bargaining agreement. We address both issues, seriatim, below.

### (a) Intentional Infliction of Emotional Distress

▆ In syllabus point 6 of *Harless v. First Nat. Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982) we set out the elements for an intentional infliction of emotional distress cause of action as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The conduct resulting in Mrs. Tolliver's emotional distress claim involved an alleged humiliating job demotion and yelling and harassment by her superiors. It is claimed by Mrs. Tolliver that this conduct constituted the intentional infliction of emotional distress. The dispositive issue for this Court is whether the CBA required the alleged conduct to be resolved through its procedures.

Our examination of the CBA is guided by well established legal principles. This Court held in syllabus point 1 of *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962) that "[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Vol Syl. Pt. 2, *Orteza v. Monongalia County General Hospital,* 173 W.Va. 461, 318 S.E.2d 40 (1984) ("Where the terms of a contract are clear and unambiguous, they must be applied and not construed."). We recently stated in syllabus point 1 of *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont,* 196 W.Va. 97, 468 S.E.2d 712 (1996) our long held principle that " '[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them. Syllabus Point 3, *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962).' Syllabus Point 2, *Bennett v. Dove,* 166 W.Va. 772, 277 S.E.2d 617 (1981)." Moreover, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous." Syl. Pt. 1, in part, *Berkeley Co. Pub. Ser. Dist. v. Vitro Corp.,* 152 W.Va. 252, 162 S.E.2d 189 (1968). In syllabus point 13 of *State v. Harden,* 62 W.Va. 313, 58 S.E. 715 (1907) we attached the following meaning to the term *ambiguity:*

> Ambiguity in a statute or other instrument consists of susceptibility of two or more meanings and uncertainty as to which was intended. Mere informality in phraseology or clumsiness of expression does not make it ambiguous, if the language imports one meaning or intention with reasonable certainty.

Our review of the language of the CBA directs this Court to the conclusion that the

underlying allegations giving rise to the intentional infliction of emotional distress claim were matters subject to resolution through the grievance process. Mrs. Tolliver's allegations involved routine working condition matters, which typically are resolved through the grievance procedures.

The record is unclear as to whether Mrs. Tolliver in fact exhausted the grievance procedure under the CBA. What is undeniably clear from the CBA itself, is that Mrs. Tolliver was obligated to exhaust her remedies under the CBA. The underlying conduct on her intentional infliction of emotional distress claim did not rise to the level that would permit her to abandon the grievance procedure and resort to our courts. Further, if Mrs. Tolliver did, in fact, exhaust the grievance process then she was bound by its resolution so long as the process was carried out fairly. " 'It has long been the rule in this State that where parties have undertaken arbitration, their award is binding and may only be attacked in the courts on the basis of fraud or on those grounds set out in W.Va. Code, 55–10–4.' " *Rashid v. Schenck Const. Co., Inc.*, 190 W.Va. 363, 367, 438 S.E.2d 543, 547 (1993), *quoting Clinton Water Association v. Farmers Construction Co.*, 163 W.Va. 85, 254 S.E.2d 692 (1979).

To be clear, we are not intimating that under no set of circumstances may an employee abandon a grievance process and resort to our courts with a claim of intentional infliction of emotional distress.[12] However, the particular facts of this case demanded resolution through the process provided for by the collective bargaining agreement. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985) ("A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, ... as well as eviscerate a central tenet of ... labor contract[.]"). Therefore, the circuit court was correct in finding the underlying conduct for the claim of intentional infliction of emotional distress was a matter governed by the CBA.

#### (b) Assault and Battery

■ Mrs. Tolliver alleged that Terry Lucas committed assault and battery against her. The conduct set forth in the pleadings indicate that the legal phrase "assault and battery" is used to refer to the tort of battery. The Restatement (Second) of Torts, § 13 (1965), sets out the elements of the tort of battery as follows:

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

*See* Syl. Pt. 1, *Funeral Services by Gregory, Inc. v. Bluefield Community Hosp.*, 186 W.Va. 424, 413 S.E.2d 79 (1991) ("In order to be liable for a battery, an actor must act with the intention of causing a harmful or offensive contact with a person."), overruled on other grounds, *Courtney v. Courtney*, 190 W.Va. 126, 437 S.E.2d 436 (1993).

During oral argument, counsel for the defendants conceded that no provision in the collective bargaining agreement addressed assault and battery. Counsel argued that the spirit of the CBA brings this intentional tort conduct under the collective bargaining agreement. We are not concerned with the

---

**12.** *See Greenfield* (where grievance process abandoned and intentional infliction of emotional distress was a theory of recovery filed in circuit court); *Hanks v. General Motors Corp.*, 906 F.2d 341 (8th Cir.1990) (intentional infliction of emotional distress based on an employer's assigning employee to work under a supervisor who had sexually assaulted her daughter was outside collective bargaining agreement). *Jackson v. Kimel*, 992 F.2d 1318 (4th Cir.1993) (intentional infliction of emotional distress based on coerced sex in exchange for job benefits is wrongful regardless of collective bargaining agreement); *Perugini v. Safeway Stores*, 935 F.2d 1083 (9th Cir. 1991) (intentional infliction of emotional distress for harassment by store manager outside collective bargaining agreement); *Knafel v. Pepsi–Cola Bottlers of Akron, Inc.*, 899 F.2d 1473 (6th Cir. 1990) (intentional infliction of emotional distress claim not barred); *Sauls v. Union Oil Co.*, 750 F.Supp. 783 (E.D.Tex.1990) (intentional infliction of emotional distress did not require interpretation of collective bargaining agreement); *Coulter v. Construction & Gen. Laborers*, 107 Or. App. 522, 812 P.2d 850 (1991) (intentional infliction of emotional distress based on constructive discharge for refusing supervisor's sexual advances outside collective bargaining agreement).

spirit of the CBA. Our analysis is limited to concrete facts and legal principles.

Defendants argue that Mrs. Tolliver, in fact, utilized the grievance procedure to litigate the assault and battery claim. Therefore, defendants assert that Mrs. Tolliver is bound by the grievance procedure. As previously noted, the record is unclear as to whether Mrs. Tolliver *exhausted* the grievance procedure; however, it is clear that she *invoked* the grievance procedure. The record suggests that she may have abandoned that process to bring the instant matter.

Our recent decision in *Greenfield* involved an employee who abandoned a grievance procedure, established under a collective bargaining agreement, in order to file tort causes of action against his employer. We did not directly confront the issue of abandoning the grievance procedure in *Greenfield*. The focus of *Greenfield* was whether or not the federal Labor Management Relations Act preempted the employee's state claims. We determined that the state claims were not preempted as *Greenfield's* claims centered on matters that did not involve interpretation of the CBA.

■ Implicit in *Greenfield* was an acknowledgment by this Court that, when an employment matter does not come within the scope of a CBA, an employee may abandon an employment grievance procedure once started, and seek relief in a circuit court. *Greenfield's* implicit holding is controlling. Whether Mrs. Tolliver abandoned or unsatisfactorily resolved her assault and battery claim through the grievance process is irrelevant. Assault and battery is not within the scope of the CBA. No mechanism is provided in the CBA which would permit meaningful and adequate relief for such a claim. *See Franchise Tax Bd. Of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 25 n. 28, 103 S.Ct. 2841, 2854 n. 28, 77 L.Ed.2d 420 (1983) ("[A] state battery suit growing out of a violent strike would not arise under [a collective bargaining agreement] simply because the strike may have been a violation of an employer-union contract.") *Galvez v. Kuhn*, 933

F.2d 773 (9th Cir.1991) (assault and battery outside collective bargaining agreement). We hold, therefore, that it was error for the circuit court to find that the assault and battery claim was subject to the CBA.

Our inquiry into the assault and battery issue strikes at the heart of a public policy matter that must be addressed. In *Galvez* the plaintiff brought an assault and battery claim against his employer. The action was brought after plaintiff was injured due to his supervisor increasing the speed of a conveyor belt from which plaintiff unloaded products. The Ninth Circuit held that plaintiff's claim for assault and battery could proceed under California law as the claim was not based upon the CBA. A central concern expressed in *Galvez* was that federal law did " 'not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law[.]' " *Galvez*, 933 F.2d at 777, *quoting Allis–Chalmers*, 471 U.S. at 212, 105 S.Ct. at 1912.

We have previously addressed the issue of what role a CBA may have in altering or limiting an employee's statutory rights. In syllabus point 5 of *Ash v. Ravens Metal Products, Inc.*, 190 W.Va. 90, 437 S.E.2d 254 (1993) we held that "[a]n arbitration clause of a collective bargaining agreement cannot nullify the statutory rights given to employees under the West Virginia Wage Payment and Collection Act, W.Va.Code, 21–5–1, et seq." In *Davis v. Kitt Energy Corp.*, 179 W.Va. 37, 43, 365 S.E.2d 82, 88 (1987), we pointed out that "[t]he United States Supreme Court has considered on several occasions whether rights arising from a collective bargaining or wage agreement can in effect supplant or diminish statutory rights, and has concluded that they may not." *Citing McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

Under the penal code of this state, assault[13] and battery[14] are independent crimes. Because they are crimes, every person in this state has a statutory right not to be a victim of such conduct. Therefore, the rights of employees to be free of criminal conduct, such as assault and battery, at the hands of their employers are "independent of the collective bargaining process. They devolve on [employees] as individual workers, not as members of a collective organization. They are not waivable." *Barrentine*, 450 U.S. at 745, 101 S.Ct. at 1447.[15]

■ Assault and battery conduct is not a part of, nor a condition of employment. As a matter of public policy in this state, we hold that generally a CBA may not bind employees to resolve assault or battery conduct by employers or their agents through grievance procedures.[16]

**D. Pleading a Deliberate Intention Cause of Action Against an Employer Under W.Va.Code § 23-4-2(c)(2)(i)**

■ The circuit court found, as an alternative basis for granting partial summary judgment, that Mrs. Tolliver failed to plead that the assault and battery claim was exempt from the immunity provided to the defendants under the West Virginia Worker's Compensation Act (Act).[17] We interpret this ruling to mean that Mrs. Tolliver failed to adequately set out a claim under the Act against all defendants.

As a general matter, employers and their managers have statutory immunity from tort actions against them by their employees.[18] However, this immunity may be pierced under appropriate circumstances. For example, as discussed below, when an employer acts with deliberate intention. We held in syllabus point 1 of *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990) that "[t]he statute creating a legislative standard for loss of employer immunity from civil liability for work-related injury to employees found in W.Va.Code Sec. 23-4-2 (1983) essentially sets forth two separate and distinct methods of proving 'deliberate intention.'"

13. *See* W.Va.Code § 61-2-9(b) (1992), which provides:

(b) Assault.—If any person unlawfully attempts to commit a violent injury to the person of another or unlawfully commits an act which places another in reasonable apprehension of immediately receiving a violent injury, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail for not more than six months, or fined not more than one hundred dollars, or both such fine and imprisonment.

14. *See* W.Va.Code § 61-2-9(c) (1992), which provides:

(c) Battery.—If any person unlawfully and intentionally makes physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally causes physical harm to another person, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail for not more than twelve months, or fined not more than five hundred dollars, or both such fine and imprisonment.

15. We are aware that there are a few areas of employment law where assault-like and battery-like conduct are part of the job. Therefore, such conduct may be a valid part of a collective bargaining agreement. E.g. football, baseball, soccer, etc.

16. *See Hayden v. Reickerd*, 957 F.2d 1506, 1511 (9th Cir.1991) ("[T]he collective bargaining agreement cannot supersede Hayden's state law right to be free from battery and tortious retaliatory conduct in all events."); *Burnette v. Godshall*, 828 F.Supp. 1439, 1446 (N.D.Cal.1993)

("The prohibition against [assault and battery] exists independent of any contract. Plaintiff's claim cannot require interpretation of the agreement's negotiated provisions."); *Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. 141, 154 (D.Conn.1993) ("[A]ssault and battery, both of which can be resolved without reference to the terms and conditions of the collective-bargaining agreement."); *Briggs v. General Motors Corporation*, 754 F.Supp. 107, 111 (W,D.Mich.1990) ("With regard to ... claims for assault and battery ... [they] are independent of the collective bargaining agreement."); *Johnson v. AT & T Technologies, Inc.*, 713 F.Supp. 885, 889 (M.D.N.C.1989) ("[U]npermitted physical contact may give rise to an action in tort, without reference to the terms of a collective bargaining agreement, as conduct outside the realm of permitted activity under a collective bargaining agreement."); *Surrency v. Harbison*, 489 So.2d 1097, 1102 (Ala.1986) ("Since the plaintiff's ... assault and battery claims are not bound with questions of the labor contract's interpretation, we hold that these intentional tort claims are not, per se, preempted from state court consideration.").

17. We have already determined that the circuit court did not commit error in granting partial summary judgment on Mrs. Tolliver's claim for intentional infliction of emotional distress.

18. *See* W.Va.Code §§ 23-2-6, 23-2-6a, and 23-4-2(c)(1) (1994).

### 1. Deliberate Intent Requirements of W.Va.Code § 23-4-2(c)(2)(i)

■ Pursuant to W.Va.Code § 23-4-2(c)(2)(i) (1994) [19] employer immunity from a tortious action for an injury to an employee, may be overcome when an injured employee shows that the employer caused injury with *deliberate intention*, as that phrase is therein defined. Alternatively, employer immunity may be destroyed under W.Va.Code § 23-4-2(c)(2)(ii) (1994),[20] where conduct involving unsafe working conditions, which caused the harm, is established under the five factors set out in the statute. *See* Syl. Pt. 2, *Mayles* ("A plaintiff may establish 'deliberate intention' in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in W.Va.Code Sec. 23-4-2(c)(2)(ii) [1994]."). However, at the summary judgment hearing and during the argument before this Court, counsel for Mrs. Tolliver conceded that he was not attempting to pierce the immunity statutes through W.Va.Code § 23-4-2(c)(2)(ii). Counsel referred to the provision as a *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978) claim.[21] Therefore, it is clear from the allegations of the complaint, alleging assault and battery, that Mrs. Tolliver had to overcome the defendants' immunity by pleading a cause of action under W.Va.Code § 23-4-2(c)(2)(i).

The circuit court's alternative ruling, therefore, clearly meant that Mrs. Tolliver failed to adequately plead a prima facie case against the defendants under W.Va.Code § 23-4-2(c)(2)(i).

■ We have not previously had an opportunity to address the issue of what is required to plead a prima facie case under W.Va.Code § 23-4-2(c)(2)(i). The legislature has plainly indicated the type of allegations which do not sustain a cause of action under W.Va.Code § 23-4-2(c)(2)(i), which specifically provides that a cause of action under its

19. W.Va.Code § 23-4-2(c)(2)(i) provides:

(2) The immunity from suit provided under this section and under section six-a, article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". This requirement may be satisfied only if:

(i) It is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct[.]

20. W.Va.Code § 23-4-2(c)(2)(ii) provides:

(2) The immunity from suit provided under this section and under section six-a, article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". This requirement may be satisfied only if:

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

21. We point out again, as we did in *Bell*, 197 W.Va. 138, 143-144 n. 11, 475 S.E.2d 138, 145 n. 11 (1996):

We are aware that the entire bench and bar of this State are tempted to use the term 'Mandolidis' as a euphemism for a deliberate intention injury. Because we have now assigned the *Mandolidis* opinion as a relic of the common law with no relevance in our current workers' compensation jurisprudence, it might be an appropriate time to introduce 'deliberate intention' into our lexicon of causes of action instead of 'Mandolidis'—it no longer exists!

provision "may not be satisfied by [an] allegation ... of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct[.]" The language of this provision demands overcoming a high threshold to establish a cause of action under W.Va.Code § 23–4–2(c)(2)(i).

To properly plead a prima facie case under W.Va.Code § 23–4–2(c)(2)(i), the statute requires an employee set out *deliberate intention* allegations. *See Johnson v. Mountaire Farms of Delmarva, Inc.*, 305 Md. 246, 255, 503 A.2d 708, 712 (1986) ("To bypass the exclusivity provided by a workmen's compensation statute such as ours, the complaint must be based upon allegations of an intentional or deliberate act by the employer with a desire to bring about the consequences of the act."); *New Jersey Manufacturers Insurance Company v. Joseph Oat Corporation*, 287 N.J.Super. 190, 670 A.2d 1071 (1995) (holding that allegations of the complaint must rise to the level of intentional wrongs). Under the statute, deliberate intention allegations may only be satisfied where it is alleged an employer "acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury[.]" We said in syllabus point 2 of *Bell v. Vecellio & Grogan, Inc.*, 197 W.Va. 138, 475 S.E.2d 138 (1996) that:

W.Va.Code 23–4–2(c) [ (1994) ] represents the wholesale abandonment of the common law tort concept of a deliberate intention cause of action by an employee against an employer, to be replaced by a statutory direct cause of action by an employee against an employer expressed within the workers' compensation system.

Although our decision in *Bell* was narrowly focused on W.Va.Code § 23–4–2(c)(2)(ii), our analysis of deliberate intention under that provision is applicable with equal force under W.Va.Code § 23–4–2(c)(2)(i). We observed in *Bell* that "[i]n all cases prior to the revision of W.Va.Code 23–4–2 in May 1983, ... deliberate intention was an act defined under amorphous common law principles where the consequences were weighed in the mind beforehand, after prolonged meditation, with design and malignity of heart." *Bell*, 197 W.Va. at 141, 475 S.E.2d at 141. (Citations omitted.) However, "[w]hen the Legislature revised W.Va.Code 23–4–2(c)(2)(i)–(ii) in 1983, ... it removed the common law definition of deliberate intention ... and placed the definition in a precise, controlled, predictable statutory environment." [22] *Id.*, 197 W.Va. at 143, 475 S.E.2d at 143. Additionally, in *Bustamante v. Tuliano* 248 N.J.Super. 492, 498, 591 A.2d 694, 697 (1991), it was "pointed out that ... although different jurisdictions may craft different formulations, whatever formulation is used represents a

**22.** We note that other jurisdictions impose severe restrictions on common law actions against employers by employees for injuries. *See, e.g., Rangel v. Denton Plastics, Inc.*, 148 Or.App. 328, 939 P.2d 644 (1997) (holding that acts or omissions of gross negligence, carelessness, recklessness or conscious indifference to injury do not meet the requisites of a deliberate intention to injure); *Bustamante v. Tuliano* 248 N.J.Super. 492, 591 A.2d 694 (1991) (holding that the term intentional wrong as used in workers' compensation statute requires a showing of deliberate intention to injure); *McNees v. Cedar Springs Stamping Co.*, 184 Mich.App. 101, 457 N.W.2d 68 (1990) (employer is deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge); *Burt v. Dunham–Price, Inc.*, 549 So.2d 912 (La.Ct.App.1989) (the employer must consciously desire the physical result of his act or know that the result is substantially certain, inevitable or incapable of failing to occur); *Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St.3d 135, 522 N.E.2d 477 (1988) (defines the elements of an intentional tort committed by an employer upon an employee utilizing the substantially certain standard which is defined in the statute as a deliberate intent); *Adsem v. Roske*, 224 Mont. 269, 728 P.2d 1352 (1986) (holding the harm alleged must have been maliciously and specifically directed at the employee); *Lawton v. Alpine Engineered Products, Inc.*, 498 So.2d 879 (Fla.1986) (must prove that employer deliberately intended to injure or was substantially certain that the result would occur; substantial certainty requires more than a strong probability of injury, it requires virtual certainty); *Johnson v. Mountaire Farms of Delmarva, Inc.*, 305 Md. 246, 503 A.2d 708 (1986) (holding that deliberate intention to cause an employee's injury implies the formation by the employer of a specific intention to cause injury or death combined with some action aimed at accomplishing such result, as opposed to mere employer negligence or gross negligence); *Mingachos v. CBS, Inc.*, 196 Conn. 91, 102, 491 A.2d 368, 375 (1985) (the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted).

conscious effort to impose severe restrictions on the exception [to employer immunity], bringing it as close to 'subjective desire to injure' as the nuances of language will permit[.]"

Turning to the case at hand, the complaint alleged the following: "The plaintiff, Linda Sue Tolliver, was physically assaulted and battered by her supervisor, Terry Lucas, while she was an employee at the Barboursville store." Mrs. Tolliver asks this Court to sustain the language from her complaint as meeting the specific deliberate intention pleading requirements of W.Va.Code § 23–4–2(c)(2)(i).[23] The circuit court found, as a matter of law, the language failed to satisfy the deliberate intention pleading requirement. We agree. Of course, this issue turned on a motion for summary judgment under Rule 56, and not an actual pleading motion for failing to state a claim under Rule 12(b)(6) or 12(c) of the West Virginia Rules of Civil Procedure.[24] *See Barker v. Traders Bank,* 152 W.Va. 774, 778, 166 S.E.2d 331, 334 (1969) ("There is some overlapping perhaps of Rules 12(b)(6), 12(c) and 56, R.C.P.").

Mrs. Tolliver could have remedied the fatally defective pleading by properly setting out a prima facie showing of deliberate intention in her written summary judgment response brief. However, Mrs. Tolliver failed to submit a written summary judgment response brief. Additionally, the circuit court found that during oral presentation at the summary judgment hearing Mrs. Tolliver failed to articulate a prima facie showing of deliberate intention.[25] We agree. Mrs. Tolliver's complaint and arguments during the summary judgment hearing failed to comply with the statutory requirements for sustaining a cause of action under W.Va.Code § 23–4–2(c)(2)(i).[26] We, therefore, affirm the circuit court's alternative ground for granting partial summary judgment on the claim of assault and battery.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the order of the circuit court of Cabell County.

Affirmed.

---

**23.** It was noted by this Court in *Hutchison v. City of Huntington,* 198 W.Va. 139, 149, 479 S.E.2d 649, 659 (1996), that "in civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff." Citing *Schultea v. Wood,* 47 F.3d 1427 (5th Cir. 1995) (en banc).

**24.** The essence of the circuit court's ruling sounded under Rule 12(b)(6). However, we will not reverse and remand this issue with instructions that the circuit court enter an order dismissing the claim for failure to state a claim upon which relief can be granted. Rule 12(b)(6) specifically contemplates conversion to a Rule 56 disposition when matters outside the pleadings are presented. In the instant proceeding, matters outside the pleadings were presented.

**25.** *See e.g.,* Syl. Pt. 1, *Harrison v. Davis,* 197 W.Va. 651, 478 S.E.2d 104 (1996) ("The West Virginia Rules of Civil Procedure should be construed liberally to promote justice. Consistent

with this liberal approach, a circuit court may look beyond the technical nomenclature of the complaint when ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure to reach the substance of the parties' positions. This approach is particularly proper where the plaintiff attempts orally to explain the allegations of the complaint because such explanations may constitute an admission against the plaintiff.").

**26.** In the final analysis, Mrs. Tolliver's failure to adequately plead a deliberate intention cause of action in her complaint or during the summary judgment proceeding resulted in no genuine issue of material fact being in dispute. To have a genuine issue of material fact in dispute, there is a prerequisite that a cause of action be properly plead. Without meeting the prerequisite, no cause of action can survive summary judgment.