# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Charles Lucian Hall, Jr.,**
**Plaintiff Below, Petitioner**

**FILED**

April 12, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 081811 (Taylor County 07-C-37)**

**John Doe, Jim Doe and Grafton**
**Truss and Panel Company, Inc.,**
**d/b/a Grafton Homes, a West Virginia**
**corporation, Defendants Below, Respondents**


## MEMORANDUM DECISION

Petitioner Charles Lucian Hall, Jr., by counsel LaVerne Sweeney, appeals the order of the Circuit Court of Taylor County, entered June 7, 2008, granting the defendant Grafton Truss & Panel Company's motion for summary judgment. The named corporate defendant/respondent appears by counsel James M. Wilson, Amy M. Smith, and Tiffany A. Swiger.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The petitioner alleges that the corporate respondent is liable for injuries that he sustained when co-employees John Doe and Jim Doe—each of whom remain unidentified—placed a "tripping device" in his path at the respondent's manufacturing plant. He argues on appeal that employee misconduct was so pervasive in his workplace that it created a dangerous environment known to the respondent, his employer, and that the respondent's failure to address the misconduct amounted to the deliberate intention to cause his injury, thereby removing the immunity provided by the Workers' Compensation Act at W.Va. Code § 23-2-6 (2010). The petitioner also suggests through pleadings that he was abused by co-workers because he had been labeled a "narc" years before by another employee, Brian Roy.

---

[1] Mr. Hall timely filed his appeal on September 10, 2008, but the matter was stayed shortly thereafter pursuant to the filing of a suggestion of bankruptcy in the Circuit Court of Taylor County by the corporate respondent on November 7, 2008. The matter was restored to the active docket of this Court by order entered January 18, 2013, upon the respondent's having advised the Clerk of the termination of the automatic stay of proceedings, pursuant to 11 U.S.C. § 362(c)(2)(A).

1

In this appeal, the Court is asked to review an order granting summary judgment. Accordingly, our review is de novo. See Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). Furthermore, in conducting our de novo review, we apply the same summary judgment standard that is applied in the circuit court. *See id.*, Syl. pt. 2. ("A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." (quotations and citations omitted)). Finally, we note that

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter*, 192 W.Va. 189, 451 S.E.2d 755.

On the date of the petitioner's injury, the corporate respondent was a subscriber-in-good-standing to the West Virginia Workers' Compensation Fund, and the petitioner ultimately received workers' compensation benefits for injuries resulting from his fall. Under the portion of the statute specifically pled by the petitioner, the respondent's workers' compensation immunity is lost only if

> [i]t is proved that the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by an allegation or proof of: (A) Conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct . . . .

W.Va. Code § 23-4-2(d)(2)(i).[2]

---

[2] Alternatively, an employee can present a deliberate intention claim by establishing the following five factors:

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule,

2

The petitioner has offered no evidence of an inherently dangerous work environment. His own deposition testimony falls short of supporting his allegations, and fails to establish that his employer acted with a conscious, subjective and deliberately-formed intention to produce the petitioner's injuries.

The petitioner explained that on the day he fell, April 12, 2005, he left his work station to retrieve a saw from the tool room. When he returned the same way he had gone, he tripped on a table saw cord that had been stretched across his path and tied to a workbench leg. The petitioner acknowledged that there were no witnesses to his fall, but said that foreman George Harris found him, unconscious, on the ground. He testified that he called the following day and told "somebody" that he would not be reporting to work because of the accident. He further testified that he had come upon a similar trap in the same area sometime before, but realized on the earlier occasion that there was a cord across his path and did not fall. Asked when the earlier incident had occurred, the petitioner responded that he did not remember.

The petitioner testified that he did not tell anyone he believed that he was the victim of an intentional snare and, in fact, never discussed his actual tripping or his earlier discovery of the tied cord with anyone. Upon questioning by the corporate respondent's counsel, the petitioner testified as follows:

Q:     Do you believe that somebody secured that cord to the table leg?
A:     Someone, yes, yes.
Q:     Do you know who did it?
A:     No.
Q:     Do you have any idea who would have done that?
A:     No.
Q:     Do you think that the wire being tied there, do you believe that it was tied there specifically for anyone to trip?
A:     For anyone.
Q:     Do you have any idea who would have tied that wire to cause someone to trip?
A:     I don't know.
Q:     Do you know of anyone who doesn't like you or didn't like you at the time at Grafton Homes that would have tied that wire for you to trip?

---

regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and
(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one [ § 23-4-1], article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W.Va.Code § 23–4–2(d)(2)(ii).

A: I don't know.
Q: Did you ever have any problems with anybody during the time of the first incident that you believed had ill feelings toward[] you?
A: I don't know.
Q: Did anyone else ever trip besides you?
A: I don't know.

The remainder of the petitioner's testimony similarly lacked detail, and showcased a history of the petitioner's non-reporting of his alleged maltreatment at the hands of unidentified coworkers.[3] For example, the petitioner said that he had been the target of drywall-throwing co-workers on five or six occasions, but stated that he did not know who had thrown the drywall and did not recall whether he had reported that drywall had been thrown. He said he was frequently pelted by nails from behind, though he could not identify the individuals who had thrown the nails and did not report being hit by nails because "[f]oremen were all aware of the drywall being throw[n.]" He was "butted" by body parts several times per week, but was never able to identify the person who butted him, and did not know whether it was accidental. He witnessed saw blades thrown into the plant ceiling, but did not know who threw the blades and never told anyone about this activity. He testified that he saw employees shooting nail guns, but did not report it. Finally, he testified that the respondent "had a lot of people down there on drugs and alcohol[,]" but he did not know the names of the people using drugs or alcohol, and had not reported this suspicion to anyone. Though he said he had conversations with co-workers about employee drug use, he was unable to remember the names of the co-workers with whom he spoke.

The petitioner was, however, able to identify one of his alleged tormentors. He testified that Brian Roy threw drywall at him, "butted" him into a wall, locked him in a closet and flatulated and, finally, in December of 2003, set the petitioner's nail pouch afire, while the petitioner was wearing it. The petitioner and Mr. Roy had an off-premises altercation after the petitioner reported the nail pouch incident to a supervisor, for which altercation Mr. Roy was arrested. The petitioner testified that Mr. Roy's employment was terminated for his part in the incident.

On only two other occasions does it appear that the petitioner volunteered information to supervisors about problems with co-workers. The petitioner was unable to establish the time frame of the incident, but testified that he had been "grabbed and choked" by co-worker David McMasters on his way to the lunchroom. Upon learning that Mr. McMasters had reported the situation to a supervisor, the petitioner then went to foreman Phil Isner and told him that he had been assaulted. Mr. Isner responded, "I heard it the other way around." The petitioner testified that he was not disciplined for the incident, and he did not know if Mr. McMasters was disciplined. However, Mr. McMasters apologized to the petitioner, and the two had no trouble afterward. The petitioner also said that another employee hit him in the leg with a hammer, and that foreman Bob Sharps then had a talk with that employee.

---

[3] In addition to the allegations of dangerous misconduct, the petitioner also asserted that he was the victim of a number of pranks, such as finding glue in the lock of his toolbox, having tools taken from his tool belt and hidden, and having the gas tank of a forklift turned off while he operated the forklift. He had little additional information to offer about these alleged nuisances.

4

Under the circumstances described through this testimony, the petitioner simply cannot overcome the high threshold demanded for a deliberate intention action. *See Tolliver v. Kroger Co.*, 201 W.Va. 509, 498 S.E.2d 702 (1997). On each of the rare occasions that the petitioner reported misdeeds to the respondent, the respondent appears to have taken corrective action. In fact, the petitioner alleges ongoing abuse by only one employee, and that person's employment was terminated by the end of January of 2004, nearly a year and a half before the petitioner's tripping incident. The petitioner's testimony reflects that he never advised his employer of trouble from any employee other than Brian Roy, David McMasters, and the unidentified employee who hit his leg with a hammer. The conflict with Mr. McMasters was short-lived, and there is no evidence of continued trouble after Mr. Sharps, the foreman, spoke with the unidentified employee.

If the petitioner continued to suffer maltreatment at the hands of his co-workers after the termination of Mr. Roy, or if other employees routinely engaged in dangerous shenanigans, it does not appear that the respondent knew or had reason to know about the conduct. And there is certainly no reason to impute knowledge of tripping hazards to the respondent, when the petitioner testified he came upon such a hazard on only one other occasion, but did not fall victim to the earlier trap or tell anyone about it. Under these circumstances, we simply cannot find any support for the petitioner's contention that the respondent had the actual, specific intent that he suffer harm.

For the foregoing reasons, we affirm.

Affirmed.


**ISSUED:** April 12, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II